**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALEXANDRA MARCHUK,

                        Plaintiff,

      v.

FARUQI & FARUQI, LLP, JUAN E.
MONTEVERDE, NADEEM FARUQI,
and LUBNA FARUQI,

                      Defendants.

Civil Action No. 13-CV-1669 (AKH)

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THEIR MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

Page

I.    MIL # 1:    TO PRECLUDE EVIDENCE CONCERNING
DEFENDANTS' FINANCIAL CONDITION AS IRRELEVANT AND
UNFAIRLY PREJUDICIAL ......................................................................... 1

II.   MIL # 2:    TO PRECLUDE DR. JACOBSON'S TESTIMONY
BECAUSE OF HIS IMPROPER CONTINGENCY FEE
ARRANGEMENT ...................................................................................... 2

III.  MIL # 3:    TO PRECLUDE EVIDENCE CONCERNING KERRIANNE
GOODWIN AS IRRELEVANT ................................................................. 4

      a.    Ms. Goodwin's Testimony Does Not Show The Existence Of A
            Hostile Work Environment ............................................................. 4

      b.    Ms. Goodwin's Testimony Does Not Show Discriminatory Intent ....................... 6

            i.    Ms. Goodwin's Testimony Is Inadmissible To Show That
                  "Mr. Monetverde Has A Sexist And Demeaning Attitude
                  Towards Women" ...................................................................6

            ii.   Ms. Goodwin's Testimony Cannot Show Knowledge On
                  The Part Of F&F Because She Made No Complaints Until
                  After Plaintiff Quit At F&F ......................................................7

IV.   MIL # 4:    TO PRECLUDE EVIDENCE CONCERNING JAMIE
MOGIL AS IRRELEVANT ........................................................................ 7

      a.    Ms. Mogil's Testimony Does Not Show The Existence Of A
            Hostile Work Environment ............................................................. 8

      b.    Ms. Mogil's Testimony Does Not Show Discriminatory Intent ............................ 8

            i.    Ms. Mogil's Testimony Is Inadmissible To Show That "Mr.
                  Monteverde Has A Sexist And Demeaning Attitude
                  Towards Women" ...................................................................8

            ii.   Ms. Mogil's Testimony Cannot Show Knowledge On The
                  Part Of F&F Because She Made No Complaints Until After
                  Plaintiff Quit At F&F ..............................................................9

V.    MIL # 5:    TO PRECLUDE BRIAN MOON'S TESTIMONY AS
IRRELEVANT AND AS INADMISSIBLE CHARACTER EVIDENCE ....................... 9

VI.   MIL # 6:    TO PRECLUDE PLAINTIFF'S STATEMENTS TO
FRIENDS CATEGORIZING HER SEXUAL ENCOUNTER AFTER
THE HOLIDAY PARTY AS A SEXUAL ASSAULT ................................................. 10

i

VII.   MIL # 7:   TO PRECLUDE REFERENCE TO VINCE MUÑOZ'S
       PRIOR EMPLOYMENT HISTORY AND FAMILIAL OBLIGATIONS ..................... 12

VIII.  MIL #8:   TO PRECLUDE REFERENCE TO THE BERNAZ V.
       CHOBANI, INC. LITIGATION.................................................................................. 14

IX.    MIL # 9:   PLAINTIFF DOES NOT OPPOSE PRECLUDING
       REFERENCE TO THE DISMISSED CLAIMS OF MALICIOUS
       PROSECUTION AND TITLE VII VIOLATIONS AGAINST THE
       INDIVIDUAL DEFENDANTS............................................................................... 15

X.     MIL # 10:   TO PRECLUDE PLAINTIFF FROM ASSERTING ANY
       CLAIM OF CONSTRUCTIVE DISCHARGE BECAUSE SHE DID NOT
       BRING THAT CLAIM IN HER PLEADINGS ............................................... 16

CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfano v. Costello*,
   294 F.3d 365 (2d. Cir 2002) ............................................................................ 5

*Dabney v. Christmas Tree Shops*,
   958 F. Supp. 2d 439 (S.D.N.Y. 2013) ........................................................... 4, 5

*Gutierrez v. City of N.Y.*,
   2012 WL 23570632 (S.D.N.Y. Jun. 20, 2012) ................................................. 6

*Hango v. Royall*,
   466 F. App'x 30 (2d Cir. 2012) ...................................................................... 12

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) .......................................................................................... 5

*Hayut v. State Univ. of N.Y.*,
   352 F.3d 733 (2d Cir. 2003) ..................................................................... 5, 6, 8

*Holtz v. Rockefeller & Co.*,
   258 F.3d 62 (2d Cir. 2001) .............................................................................. 5

*Kinsey v. Cendant Corp.*,
   588 F. Supp. 2d 516 (S.D.N.Y. 2008) .............................................................. 2

*Koufakis v. Carvel*,
   425 F.2d 892 (2d Cir. 1970) ............................................................................ 1

*L-3 Commc'ns v. OSI Sys., Inc.*,
   2006 WL 988143 (S.D.N.Y. Apr. 16, 2006) ..................................................... 2

*Laurin v. Pokoik*,
   2005 WL 2230457 (S.D.N.Y. Sept. 13, 2005) ................................................. 5

*Leibovitz v. N.Y.C. Transit Auth.*,
   252 F.3d 179 (2d Cir. 2001) ............................................................................ 4

*Reilly v. Natwest Markets Group, Inc.*,
   181 F.3d 253 (2d Cir. 1999) ............................................................................ 1

*Scott v. WPIX, Inc.*,
   2012 WL 2026428 (S.D.N.Y. May 17, 2012) ................................................... 6

*Smith v. Lightning Bolt Prods.*,
   861 F.2d 363 (2d Cir. 1988) ............................................................................ 1

*Tesser v. Board of Educ.*,
   370 F.3d 314 (2d Cir. 2004) ...................................................................... 1

*Tome v. United States*,
   513 U.S. 150 (1995) ....................................................................... 10, 11

*United States v. Bercier*,
   506 F.3d 625 (8th Cir. 2007) ...................................................................... 11

*United States v. DeStefano*,
   1995 WL 398763 (N.D. Ill. Jun. 29, 1995) ............................................................ 13

*United States v. Dixon*,
   511 F. App'x 48 (2d Cir. 2013) ...................................................................... 11

*United States v. Ferguson*,
   2007 WL 4240782 (D. Conn. Nov. 30, 2007) ...................................................... 2

*United States v. Logan*,
   250 F.3d 350 (6th Cir. 2001) ...................................................................... 2

*United States v. Pietro*,
   232 F.3d 816 (11th Cir. 2000) ...................................................................... 12

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ...................................................................... 1, 2

*Zubulake v. UBS Warburg LLC*,
   382 F. Supp. 2d 536 (S.D.N.Y. 2005) ...................................................... 6

**Other Authorities**

*Weinstein's Federal Evidence* (4th ed. 2012) ...................................................... 1

**Rules**

Fed. R. Evid. 402 ...................................................................... 1, 14

Fed. R. Evid. 403 ...................................................................... 7, 8, 10, 14

Fed. R. Evid. 404 ...................................................................... passim

Fed. R. Evid. 404(b)(1) ...................................................................... 5, 6

Fed. R. Evid. 608(b) ...................................................................... 12

I.     MIL # 1:    TO PRECLUDE EVIDENCE CONCERNING DEFENDANTS'
        FINANCIAL CONDITION AS IRRELEVANT AND UNFAIRLY PREJUDICIAL

Plaintiff argues that the amount of Mr. Monteverde's annual earnings is relevant to show:
(1) "that she reported directly to Mr. Monteverde;" (2) "that Mr. Monteverde made it explicitly
clear to her that he could and would fire her;" and (3) "that [Mr. Monteverde] had significant
influence over her compensation and bonus."  Plaintiff's Memorandum Of Law In Opposition To
Defendants' Motions In Limine, [Dkt. No. 120] ("Pl.'s Opp.") at 3.  But Mr. Monteverde's
earnings are not relevant to these assertions.  The law is clear that "evidence of a defendant's
wealth is [] not relevant to the issue of compensatory damages" under Fed. R. Evid. 402.  2-401
*Weinstein's Federal Evidence* (4th ed. 2012) § 401.08[6]; *see also Tesser v. Board of Educ.*, 370
F.3d 314, 318 (2d Cir. 2004) (evidence of wealth generally inadmissible); *Reilly v. Natwest
Markets Group, Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) (same).

Moreover, even if this evidence were relevant – and it is not – the Court should preclude
it under Rule 403 as unfairly prejudicial.  *See, e.g.*, *Koufakis v. Carvel*, 425 F.2d 892, 902 (2d
Cir. 1970) ("[S]uggesting that the defendant should respond in damages because he is rich and
the plaintiff is poor, are grounds for a new trial."); *Smith v. Lightning Bolt Prods.*, 861 F.2d 363,
373-74 (2d Cir. 1988) ("[I]t would often be prejudicial to a defendant to attempt to litigate its
financial condition during the trial on the issues of liability and compensatory damages.").

Plaintiff also argues that the amount of Mr. Monteverde's annual earnings is relevant
because it demonstrates "an obvious and undeniable incentive on the part of F&F and the
Farqui's [sic] to tolerate Mr. Monteverde's wrongful conduct."  Pl.'s Opp. at 4-5.  In support of
her argument, Plaintiff cites three criminal cases in which the prosecution was permitted to
introduce evidence of the defendant's financial condition to demonstrate motive to commit the
crimes.  *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006); *United States v.*

1

*Logan*, 250 F.3d 350, 369 (6th Cir. 2001); *United States v. Ferguson*, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007).  But these cases are inapposite because they all involved financial crimes allegedly designed to protect the defendant's wealth.  *See Quattrone*, 441 F.3d at 171-72 (obstruction of justice to avoid prosecution for securities violations); *Logan*, 250 F.3d at 356-57 (mortgage fraud); *Ferguson*, 2007 WL 4240782, at *1 (securities violations).  Here, by contrast, the Faruqis' incentive is not to protect wrongful conduct, but rather to eradicate it.  Plaintiff's allegations have negatively impacted Defendants' finances, so it is nonsense to suggest they are incentivized to tolerate such conduct.  Moreover, even if this evidence did demonstrate a financial incentive to tolerate wrongful conduct in the workplace – and it does not – it should be precluded under Rule 403 as unfairly prejudicial.

Finally, Plaintiff argues that the Court should deny Defendants' motion "because it is premature."  Pl.'s Opp. at 5.  But courts routinely make such determinations on motions *in limine*.  *See, e.g.*, *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) (granting motion *in limine* to preclude reference to financial condition, because, "[e]ven assuming that Kinsey's compensation package and negotiations with Bluegreen are of some limited relevance, that evidence is outweighed by the unfair prejudice that would result from its admission.  The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices."); *L-3 Commc'ns v. OSI Sys., Inc.*, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 16, 2006) (granting motion *in limine* to preclude reference to witness's wealth on grounds that wealth was "clearly irrelevant … and its inclusion would be unfairly prejudicial").

## II.    MIL # 2:    TO PRECLUDE DR. JACOBSON'S TESTIMONY BECAUSE OF HIS IMPROPER CONTINGENCY FEE ARRANGEMENT

Plaintiff argues Defendants' motion *in limine* to preclude Dr. Lawrence Jacobson from testifying because of his improper contingency agreement is "factually baseless" and a

"misrepresentation of the record."  Pl.'s Opp. at 5.  That is wrong.  Defendants' motion is supported by Plaintiff's deposition testimony, and is corroborated by Dr. Jacobson's hand-written examination notes.  *See* Deposition of Alexandra Marchuk, [Dkt. No. 117-1], at 87:25-88:3, 88:25-89:5 ("Dr. Jacobson agreed that 'in the event that there was some sort of recovery from this lawsuit, that there would be an agreement that [his hourly fee] would go up to his normal hourly rate' of $250 per hour, which 'will come from [the] back end' of the proceeds."); *see also* Dr. Jacobson notes, Declaration of Scott A. Bursor ("Bursor Decl.") Ex. AA at 2 ██████████████████████████████████████████████████████████

████████████████      To rebut this testimony, Plaintiff states "Ms. Marchuk was mistaken," and submits a declaration, authored two days ago by Dr. Jacobson, stating that his fees have been paid in full by Plaintiff's counsel as a litigation cost, and will be reimbursed in the event Plaintiff prevails.  Pl.'s Opp. at 6; Declaration of Dr. Lawrence Jacobson, [Dkt. No. 121-8] ("Jacobson Decl.") ¶ 3.  Notably absent, however, is any refutation of the suggestion that Dr. Jacobson's fee will increase to $250 per hour if Plaintiff ultimately prevails.[1]  Dr. Jacobson's recent declaration thus conflicts with the Plaintiff's sworn testimony and with his own contemporaneous notes.  Even if this new declaration is credited, it fails to address a core problem with Dr. Jacobson's contingent fee retention.  Even if Dr. Jacobson now understands that he will not be paid double as a result of a favorable outcome of this case, his testimony is inadmissible if he had that understanding when diagnosing Plaintiff with PTSD within one hour of their meeting.

---

[1] Dr. Jacobson's declaration purports to attach as exhibits an invoice to Plaintiff's counsel and a check from Plaintiff's counsel to Dr. Jacobson paying the invoice in full.  *See* Jacobson Decl. ¶ 6.  However, those exhibits were not attached to the filing on ECF, nor were they produced to Defendants' counsel.  Thus, the Court should not consider them.

**III.    MIL # 3:    TO PRECLUDE EVIDENCE CONCERNING KERRIANNE GOODWIN AS IRRELEVANT**

Plaintiff argues that the testimony of Kerrianne Goodwin is admissible to show the existence of a hostile work environment at F&F and discriminatory intent on the part of Defendants.  Pl's. Opp. at 12-16.  That is wrong.  Even accepting Ms. Goodwin's disputed testimony as true, it is inadmissible for either of these purposes.

**a.   Ms. Goodwin's Testimony Does Not Show The Existence Of A Hostile Work Environment**

Plaintiff argues that the testimony of coworkers is admissible to show the presence of a hostile work environment.  Pl.'s Opp. at 12-13.  But Defendants argued that Ms. Goodwin's testimony is inadmissible because it does not concern Plaintiff's work environment at F&F's New York offices.  Defendants also argued that her testimony concerning purported conduct in Delaware does not support an inference that a hostile work environment existed.

First, Defendants argued that because the purported events of Ms. Goodwin's testimony took place outside of Plaintiff's work environment in New York, they cannot be probative of the condition of Plaintiff's work environment.  Defs.' Br. at 9.  (citing *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189-90 (2d Cir. 2001) and *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 459 (S.D.N.Y. 2013)).  Plaintiff cites no authority to dispute this.  Rather, she asserts that the testimony is relevant "regardless of [its] time and place" because it concerns the "actions of Ms. Marchuk's supervisor, Mr. Monteverde, towards similarly situated F&F employees."  Pl.'s Opp. at 15.  But that is insufficient.  The Second Circuit has held that allegations of harassment by coworkers "in another part of the employer's premises, out of [plaintiff's] sight and regular orbit" cannot be used to show the existence of a hostile work environment.  *Liebovitz*, 252 F.3d at 189-90.

4

Second, Defendants argued that Ms. Goodwin's testimony is not probative of Plaintiff's work environment because her allegations arise from circumstances post-dating Plaintiff's resignation.  Defs.' Br. at 9 (citing *Laurin v. Pokoik*, 2005 WL 2230457, at *2 (S.D.N.Y. Sept. 13, 2005)).  Here, too, Plaintiff cites no authority to dispute this.  Instead, she asserts that the testimony is admissible because it "mirrors Ms. Marchuk's claims about Mr. Monteverde[]."  Pl.'s Opp. at 16.  But the Federal Rules of Evidence explicitly ban the use of past wrongs "to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Because Ms. Goodwin's testimony is not otherwise probative of Plaintiff's work environment, it is inadmissible.

Third, Defendants argued that the two incidents alleged by Ms. Goodwin were insufficiently pervasive to create a hostile work environment.  Defs.' Br. at 9-10 (citing *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002), *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003), and *Dabney*, 958 F. Supp. 2d at 458)).  Plaintiff failed to respond to this argument and legal authority.

Fourth, Defendants argued that incidents alleged by Ms. Goodwin were insufficiently severe to create a hostile work environment because they amounted to no more than simple jokes.  Defs.' Br. at 10 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) and *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)).  Plaintiff failed to respond to this argument and legal authority, too.

Finally, Defendants argued that Ms. Goodwin could not have subjectively perceived her work environment to be hostile because she specifically stated that she found Mr. Monteverde's conduct "manageable" and even told a recruiter "I'm pretty happy where I am" subsequent to

these interactions taking place.  Defs.' Br. at 10-11 (citing *Hayut*, 352 F.3d at 745).  Plaintiff did

not respond to this argument either.

### b.  Ms. Goodwin's Testimony Does Not Show Discriminatory Intent

> *i.  Ms. Goodwin's Testimony Is Inadmissible To Show That "Mr. Monetverde Has A Sexist And Demeaning Attitude Towards Women"*

Plaintiff argues that Ms. Goodwin's testimony is admissible "to establish that Mr.

Monteverde has a sexist and demeaning attitude towards women."  Pl.'s Opp. at 14.  But that is

incorrect.  Evidence of past wrongs is inadmissible "to prove a person's character in order to

show that on a particular occasion the person acted in accordance with the character."  Fed. R.

Evid. 404(b)(1).

To circumvent this rule, Plaintiff argues this testimony is admissible to show

"discriminatory intent."  Pl.'s Opp. at 14.  But Plaintiff does not elaborate on how Ms.

Goodwin's testimony shows a discriminatory intent towards women.

Plaintiff cites three cases in support of her proposition that "discriminatory conduct by an

employer is directly relevant to proving that the employer harbors discriminatory animus."  Pl.'s

Opp. at 14.  But each of these cases held that such evidence "is relevant and admissible under the

Federal Rules of Evidence to establish whether a defendant's employment action against an

employee was motivated by invidious discrimination."  *See Gutierrez v. City of N.Y.*, 2012 WL

2357063, at *2 (S.D.N.Y. Jun. 20, 2012); *see also Zubulake v. UBS Warburg LLC,* 382

F.Supp.2d 536, 522 (S.D.N.Y. 2005) (same); *Scott v. WPIX, Inc.*, 2012 WL 2026428, at *2

(S.D.N.Y. May 17, 2012) (allowing evidence of other age-based discrimination in wrongful

termination suit).  Here, by contrast, Plaintiff does not allege any adverse employment action.

She was not fired – she chose to quit.  And she had never been demoted, disciplined, or denied

any benefit of employment during her 3-month tenure at the firm.  Thus, unlike the cases where

the plaintiffs were required to show discriminatory intent for adverse employment actions, there is no such issue in this case.

Finally, even if Ms. Goodwin's testimony had some minimal relevance, it should nonetheless be precluded because its probative value is outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, and because it is directly barred by Fed. R. Evid. 404.  If allowed, Ms. Goodwin's testimony will be improperly perceived to bear on Mr. Monteverde's character to show action in conformity therewith.  That is exactly what Rule 404 prohibits.

> ii.  *Ms. Goodwin's Testimony Cannot Show Knowledge On The Part Of F&F Because She Made No Complaints Until After Plaintiff Quit At F&F*

Defendants argued that "[b]ecause Ms. Goodwin did not make any complaints to anyone at F&F until after Plaintiff quit her job, her allegations are … inadmissible to show knowledge on the part of F&F."  Defs.' Br. at 9 n.1.  In fact, Ms. Goodwin was not even employed at F&F until after Plaintiff left the firm.  Plaintiff did not respond to this argument.  Nonetheless, Plaintiff maintains that Ms. Goodwin's testimony shows that "the Faruqis knew of and tolerated" misconduct "in their workplace."  Pl.'s Opp. at 14.  It is impossible to understand, barring use of a time machine, how Plaintiff believes a subsequent event could have provided any form of notice to F&F, Mr. Faruqi, or Ms. Faruqi.  Plaintiff provides no explanation for this.

## IV.    MIL # 4:    TO PRECLUDE EVIDENCE CONCERNING JAMIE MOGIL AS IRRELEVANT

Plaintiff argues that the testimony of Jamie Mogil is admissible to show the existence of a hostile work environment at F&F and discriminatory intent on the part of Defendants.  Pl.'s Opp. at 12-16.  That is wrong.  Even accepting Ms. Mogil's disputed testimony as true, it is inadmissible for either of these purposes.

### a.  Ms. Mogil's Testimony Does Not Show The Existence Of A Hostile Work Environment

Plaintiff argues that the testimony of coworkers is admissible to show the presence of a hostile work environment.  Pl.'s Opp. at 12-13.  But Defendants argued that Ms. Mogil's testimony is inadmissible because it does not concern Plaintiff's work environment at F&F's New York offices.[2]  Defendants also argued that her testimony concerning the purported conduct does not support an inference that a hostile work environment existed.  Plaintiff did not respond to these arguments.  *See supra* Section III.a.

Moreover, Defendants argued that Ms. Mogil could not have subjectively perceived her work environment to be hostile because she continued to invite Mr. Monteverde to socialize after work hours and was disappointed when she was transferred from the M&A group.  Defs.' Br. at 14-15 (citing *Hayut*, 352 F.3d at 745).  Plaintiff did not respond to this argument either.

### b.  Ms. Mogil's Testimony Does Not Show Discriminatory Intent

#### i.  *Ms. Mogil's Testimony Is Inadmissible To Show That "Mr. Monteverde Has A Sexist And Demeaning Attitude Towards Women"*

Plaintiff argues that Ms. Mogil's testimony is admissible "to establish that Mr. Monteverde has a sexist and demeaning attitude towards women."  Pl.'s Opp. at 14.  But that is also incorrect for the reasons stated in Section III.b.i, *supra*.

Even if Ms. Mogil's testimony had some minimal relevance, it should nonetheless be precluded because its probative value is outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, and because it is directly barred by Fed. R. Evid. 404.  If allowed, Ms. Mogil's

---

[2] Defendants argued that because the purported events of Ms. Mogil's testimony took place outside of F&F's New York office, while she and Mr. Monteverde were socializing after work hours, they cannot be probative of the condition of Plaintiff's work environment.

testimony will be improperly perceived to bear on Mr. Monteverde's character to show action in conformity therewith.  That is exactly what Rule 404 prohibits.

> ii.   *Ms. Mogil's Testimony Cannot Show Knowledge On The Part Of F&F Because She Made No Complaints Until After Plaintiff Quit At F&F*

In their moving brief, Defendants argued that "[b]ecause Ms. Mogil did not make any complaints to anyone at F&F until after Plaintiff left the firm, her allegations are … inadmissible to show knowledge on the part of F&F."  Defs.' Br. at 14 n.2.  Plaintiff did not respond to this argument.  But nonetheless Plaintiff maintains that Ms. Mogil's testimony shows that "the Faruqis knew of and tolerated" misconduct "in their workplace."  Pl.'s Opp. at 14.  As with Ms. Goodwin, it is impossible to understand how Plaintiff believes a subsequent event could have provided notice to F&F, Mr. Faruqi, or Ms. Faruqi.  Plaintiff provides no explanation for this.

## V.   MIL # 5:   TO PRECLUDE BRIAN MOON'S TESTIMONY AS IRRELEVANT AND AS INADMISSIBLE CHARACTER EVIDENCE

In her opposition, Plaintiff argues that the testimony of Brian Moon is admissible in order to show the existence of a hostile work environment at F&F and discriminatory intent on the part of Defendants.  Pl.'s Opp. at 12-16.  That is wrong.  Even accepting Mr. Moon's disputed testimony as true, it is inadmissible for either of these purposes based on the arguments set forth in Section III.a-b, *supra*.

Notably, Plaintiff failed to cite a single instance of Mr. Moon's testimony showing that Mr. Monteverde made harassing comments about Plaintiff, or in Plaintiff's presence.  Moreover, she failed to cite any testimony by Mr. Moon showing that Mr. Monteverde made harassing comments during Plaintiff's employment as an associate at F&F.  On the contrary, Mr. Moon testified at his deposition that he could not recall any inappropriate sexual comments or conduct by Mr. Monteverde in Plaintiff's presence, or even "around" Plaintiff.  Defs.' Br. at 16.  Also, any purported interactions between Mr. Moon and Mr. Monteverde, *see* Pl.'s Opp. at 9-10, had

nothing to do with Plaintiff, who was not present.  Nor did those purported interactions demonstrate harassment of others in the workplace.  As such, Mr. Moon's testimony is irrelevant to Plaintiff's hostile work environment allegations.

In addition, Plaintiff did not respond to Defendants' argument that Mr. Moon's testimony constitutes improper character evidence that Mr. Monteverde has a propensity to make comments of a sexual nature in the work environment.  Defs.' Br. at 17.  In an attempt to circumvent this rule, Plaintiff argues this testimony is admissible to show "discriminatory intent."  Pl.'s Opp. at 14.  But Mr. Moon's testimony does not demonstrate a discriminatory intent against females in Plaintiff's work environment, especially since it concerns purported interactions with a male coworker.

Finally, even if Mr. Moon's testimony had some minimal relevance, it should nonetheless be precluded because its probative value is outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, and because it is directly barred by Fed. R. Evid. 404.  If allowed, Mr. Moon's testimony will be improperly perceived to bear on Mr. Monteverde's character to show action in conformity therewith.  That is exactly what Rule 404 prohibits.

## VI.   MIL # 6:   TO PRECLUDE PLAINTIFF'S STATEMENTS TO FRIENDS CATEGORIZING HER SEXUAL ENCOUNTER AFTER THE HOLIDAY PARTY AS A SEXUAL ASSAULT

Plaintiff argues "[t]here is no merit to Defendants' argument that Ms. Marchuk's prior consistent statements after December 20, 2011 must be precluded because Ms. Marchuk first spoke to counsel on or before that date."  Pl.'s Opp. at 19.  Plaintiff contends she is entitled to offer these prior consistent statements under Federal Rule of Evidence 801(d)(1)(B) to rebut Defendants' charge of fabrication.  Plaintiff's argument ignores the case law cited by

Defendants' in their moving brief, most notably *Tome v. United States*, 513 U.S. 150 (1995).  *See* Defs.' Br. at 18.

In *Tome*, the United States Supreme Court interpreted Rule 801(d)(1)(B) to "permit[] the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive *only when* those statements were made before the charged recent fabrication or improper influence or motive."  *Id.* at 167 (emphasis added).  Here, Plaintiff's statements to friends categorizing her sexual encounter with Mr. Monteverde as an assault were made after she met with an employment attorney, and thus after she had a motive to script a story for this litigation.  That motive is corroborated by the fact that Plaintiff told her treating gynecologist, before meeting with an employment attorney, that her sexual encounter with Mr. Monteverde was consensual.  As such, these statements are inadmissible under Rule 801(d)(1)(B) as interpreted by the United States Supreme Court.

Plaintiff further argues that "[a] *per se* bar against all such prior consistent statements merely because Ms. Marchuk had an initial consultation with counsel would be highly improper."  Pl.'s Opp. at 19.  That is also wrong.  In fact, Defendants' moving brief cites to *United States v. Dixon*, where the Second Circuit affirmed a district court decision imposing a *per se* ban against all prior consistent statements made after the motive to fabricate arose.  511 F. App'x 48, 53 (2d Cir. 2013) ("The court likewise acted within its discretion in declining to admit Triplett's statements as substantive evidence under Rule 801(d)(1)(B) because the motive to fabricate … had already arisen at the time these statements were made.").  Other courts have similarly imposed a ban against all prior consistent statements made after the motive to fabricate arose.  *See, e.g.*, *United States v. Bercier*, 506 F.3d 625, 629 (8th Cir. 2007) ("Here, Bercier's defense at trial was that Blue fabricated her story of non-consensual sexual assault immediately

after leaving his bedroom.  As the alleged fabrication occurred before her out-of-court statements

… Rule 801(d)(1)(B) does not apply.  …  In these circumstances, each statement was admissible

only if it fell within one or more of the hearsay exceptions in Rule 803.").  As such, Plaintiff's

out-of-court statements to her friends categorizing the sexual encounter as an assault should be

precluded because they are inadmissible hearsay, and are not admissible nonhearsay under Rule

801(d)(1)(B).[3]

## VII.   MIL # 7:   TO PRECLUDE REFERENCE TO VINCE MUÑOZ'S PRIOR EMPLOYMENT HISTORY AND FAMILIAL OBLIGATIONS

Plaintiff contends that while "[a]t Con Edison, Mr. Muñoz compiled an abominable

employment history, including write-ups relating to his credibility and veracity, particularly with

respect to matters such as attendance, employment responsibilities and employment

qualifications."  Pl.'s Opp. at 20.  But none of the matters in Mr. Muñoz's employment history

speak to his character for truthfulness.  Tellingly, Plaintiff failed to explain why any of these

matters relate to Mr. Muñoz's truthfulness.  Accordingly, reference to Mr. Muñoz's employment

history must be precluded under Rule 608.

Rule 608(b) limits cross-examination concerning witness conduct to specific instances

that are "probative of the [witness's] character for truthfulness or untruthfulness."  Fed. R. Evid.

608(b).  To be probative of a witness's character for truthfulness, the misconduct in question

must involve an element of deceit or falsification.  *See Hango v. Royall*, 466 F. App'x 30, 34 (2d

Cir. 2012) (concluding the "district court properly limited inquiry into [witness's] misconduct on

---

[3] Plaintiff's citation to *United States v. Pietro*, 232 F.3d 816 (11th Cir. 2000) is inapposite.  In
*Pietro*, the court addressed whether statements made after arrest are automatically contaminated
by a motive to lie, and held they are not.  *See id.* at 821.  The court did not hold that a *per se* ban
against prior consistent statements made after the motive to fabricate arises is improper.

cross-examination because that misconduct did not involve an element of deceit or falsification and therefore had no bearing on his character for truthfulness.").

Not only has Plaintiff failed to address any of Defendants' cases demonstrating that Mr. Muñoz's employment history is not relevant to his character for truthfulness, *see* Defs.' Br. at 19-23, but she has also failed to demonstrate that any of these matters involved deceit or falsification. To the contrary, the instances concerning Mr. Muñoz's license, truancy, and unauthorized use of company equipment do not speak to his character for truthfulness. *See, e.g.*, *United States v. DeStefano*, 1995 WL 398763, at *8 (N.D. Ill. June 29, 1995) (prohibiting prosecution from introducing evidence concerning a charge for driving with a suspended license because "[t]he driving and drug-related charges are inadmissible—whether or not there was a conviction—because they are more than 10 years old and do not involve truthfulness.").

Moreover, Mr. Muñoz's employment history has no relation to Plaintiff's apparent line of questioning for impeachment purposes. Presumably, Plaintiff intends to discredit Mr. Muñoz's testimony by suggesting that he did not actually work past midnight on the evening in question. *See* Pl.'s Opp. at 20 ("While Mr. Muñoz admits that his signature in the building's register indicates that he terminated his shift before midnight on December 15, 2011."). While Plaintiff is free to pursue that theory, she should not be permitted to do so by means of Mr. Muñoz's employment-related disciplinary records from Con Ed which, if admitted, invite the jury to discredit his testimony based on evidence which speaks to his work performance at a prior job, not his character for truthfulness.

Finally, Plaintiff contends that "several of Mr. Muñoz's infractions at Con Ed relate to his integrity regarding his workplace responsibility, particularly his integrity regarding his hours and place of employment, and Plaintiff should be permitted to question him about this infractions."

Pl.'s Opp. at 20-21.  Permitting inquiry into these matters at trial risks confusing the issues for the jury and creating unfair prejudice regarding the witness.  Therefore, any reference to Mr. Muñoz's employment history should be precluded pursuant to Rule 608.

## VIII.   MIL #8:   TO PRECLUDE REFERENCE TO THE *BERNAZ V. CHOBANI, INC.* LITIGATION

Plaintiff argues that "[t]here is no basis for Defendants' motion to preclude all reference to the <u>Bernaz v. Chobani, Inc.</u> litigation."  Pl.'s Opp. at 21.  That is wrong.  Reference to *Chobani* must be precluded as it is irrelevant under Fed. R. Evid. 402 as well as unfairly prejudicial under Fed. R. Evid. 403.  *See* Defs.' Br. at 23-25.  Plaintiff has failed to address the substance and legal authority underlying both arguments.

<u>First</u>, Plaintiff did not address Defendants' argument that reference to *Chobani* should be precluded pursuant to Fed. R. Evid. 403.  Under Rule 403, otherwise relevant evidence may be excluded where there is risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Introduction of evidence concerning *Chobani* not only invites a mini-trial concerning the circumstances surrounding the *Chobani* litigation, but also presents a substantial risk that jurors will misuse such evidence as inadmissible character evidence, thereby necessitating affirmative witnesses by Defendants to counter it.  *See* Defs.' Br. at 24-25.

<u>Second</u>, with respect to Defendants' relevance argument, Plaintiff contends that "Ms. Bernaz's … credibility is severely impaired by her close relationship with F&F and her demonstrably feeble memory."  Pl.'s Opp. at 21.  Specifically, Plaintiff asserts that Ms. Bernaz's testimony regarding *Chobani* "reflects her astoundingly poor memory regarding other important contemporaneous interactions with F&F and therefore calls into question her ability to clearly recall the conversation between Ms. Komlossy and Ms. Marchuk."  Pl.'s Opp. at 21.  That is

nonsense.  The deposition testimony of Ms. Bernaz concerning the events of September 16, 2011 is consistent with Ms. Komlossy's recollection.  *Compare* Deposition of Maryann Bernaz, Bursor Decl. Ex. BB at 37:9-43:13 *with* Deposition of Emily Komlossy, Bursor Decl. Ex. CC at 49:6-52:19, 65:12-66:21, 112:25-114:24.

Plaintiff also contends that *Chobani* is relevant because it "tends to show her close and longstanding relationship to F&F" and "reflects upon her obvious willingness to support F&F in its litigation efforts even by permitting F&F to file litigation documents on her behalf regarding matters about which she knows nothing."  Pl.'s Opp. at 21-22.  That too is wrong.  Plaintiff already has evidence that speaks to Ms. Bernaz's relationship with F&F, namely that Ms. Bernaz testified that she has known Defendants since she began working as a bartender at Rossini's in 2010 and that her daughter is employed by F&F as a paralegal.  Since Plaintiff already has this evidence, introduction of the minimally probative *Chobani* is outweighed by the prejudice it will cause Defendants by confusing the issues, misleading the jury, and wasting time.  There is no reason to let this trial get side-tracked with a mini-trial of the Chobani yogurt case.  Indeed, the Chobani case was voluntarily dismissed shortly after the complaint was filed.  Hence, it was not particularly memorable.  There has already been more litigation concerning Chobani in this case than there was in the Chobani case itself.

## IX.   MIL # 9:   PLAINTIFF DOES NOT OPPOSE PRECLUDING REFERENCE TO THE DISMISSED CLAIMS OF MALICIOUS PROSECUTION AND TITLE VII VIOLATIONS AGAINST THE INDIVIDUAL DEFENDANTS

Plaintiff does not oppose Defendants' ninth motion *in limine* to the extent that it generally seeks to preclude Plaintiff from making legal or factual arguments in support of her voluntarily dismissed claims of (1) malicious prosecution, and (2) claims of individual liability under Title VII.  Pl.'s Opp. at 22.  Consequently, the Court should grant Defendants' ninth motion *in limine* in its entirety.

15

**X.     MIL # 10:     TO PRECLUDE PLAINTIFF FROM ASSERTING ANY CLAIM OF CONSTRUCTIVE DISCHARGE BECAUSE SHE DID NOT BRING THAT CLAIM IN HER PLEADINGS**

Plaintiff argues "Defendants' motion essentially seeks summary judgment dismissing an important theory of recovery on Plaintiff's claims."  Pl.'s Opp. at 23.  But, Plaintiff did not raise a constructive discharge claim in her pleadings.  *See* Second Amended Complaint ("SAC"), [Dkt. No. 17].  Rather, Plaintiff states that she voluntarily resigned.  *Id.* ¶ 79.  As such, constructive discharge is not "an important theory of recovery on Plaintiff's claims."  It is not a part of the case.  To that end, Defendants' motion seeks to preclude Plaintiff from introducing evidence or argument supporting a claim that is not in her pleadings.[4]  The Court should accordingly grant the motion in its entirety.

## CONCLUSION

For the foregoing reasons, each of Defendants' motions *in limine* should be granted in their entirety.

---

[4] Plaintiff also argues Defendants' motion is procedurally improper because it should have been raised on summary judgment.  *See* Pl.'s Opp. at 23.  But Defendants could not have sought summary dismissal of a constructive discharge claim because it had not been pleaded.  Had Plaintiff included a constructive discharge claim in her pleadings, Defendants would have moved for summary judgment on that claim.

Dated:  December 24, 2014                    Respectfully submitted,


                                             By:     */s/ Scott A. Bursor*
                                                     Scott A. Bursor

                                             **BURSOR & FISHER, P.A.**
                                             Scott A. Bursor
                                             Joseph I. Marchese
                                             Neal J. Deckant
                                             Yitzchak Kopel
                                             888 Seventh Ave
                                             New York, NY 10019
                                             Telephone: (212) 989-9113
                                             Facsimile:  (212) 989-9163
                                             Email:  scott@bursor.com
                                                     jmarchese@bursor.com
                                                     ndeckant@bursor.com
                                                     ykopel@bursor.com

                                             *Attorneys for Defendants*