USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/28/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
ALEXANDRA MARCHUK,                                            :
                                                              :     **OPINON AND ORDER**
                                         Plaintiff,           :     **GRANTING IN PART AND**
                                                              :     **DENYING IN PART**
                -against-                                     :     **DEFENDANTS' MOTION FOR**
                                                              :     **JUDGMENT AS A MATTER**
FARUQI & FARUQI, LLP et al.,                                  :     **OF LAW**
                                                              :
                                         Defendants.          :     13 Civ. 1669 (AKH)
                                                              :
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

After Plaintiff rested her case, Defendants moved for judgment as a matter of law

("JMOL") as to all Defendants on all claims. For the following reasons, and the reasons stated on

the record during the oral argument on January 23, 2015, Defendants' motion is granted in part

and denied in part.

## LEGAL STANDARD

Fed. R. Civ. P. 50 permits a court to "enter judgment as a matter of law when a

party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury

would not have a legally sufficient evidentiary basis to find for the party on that issue." *Newton*

*v. City of New York*, 784 F. Supp. 2d 470, 474 (S.D.N.Y. 2011) (internal citations omitted). The

standard mirrors that for summary judgment. *Id.*

## DISCUSSION

### 1. **Title VII Hostile Work Environment Claim**

Plaintiff alleges Title VII violations against Plaintiff's employer, Faruqi and

Faruqi. Defendants argue that Plaintiff's hostile work environment claim should be dismissed on

two grounds.

1

First, Defendants argue that she has failed to introduce evidence establishing a *prima facie* case of hostile work environment. But Plaintiff has offered sufficient proof for a reasonable juror to conclude that she was (1) subjected to sufficiently severe or pervasive conduct that a reasonable person would find her work environment hostile or abusive; (2) Plaintiff herself perceived her work environment hostile or abusive; and (3) she was subjected to that conduct at least in part due to her sex. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). There is no legal basis for dismissing a hostile work environment claim simply because the most severe conduct allegedly occurred outside regular office hours, as Defendants argue.[1]

Defendants also argue that the federal claim must be dismissed because Title VII does not impose individual liability and Plaintiff has not offered sufficient evidence to impute Mr. Monteverde's conduct to Faruqi & Faruqi. Defendants are wrong. When harassment by a supervisor culminates in tangible employment action, an employer is strictly liable. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2437 (2013). And working conditions that "were so intolerable that a reasonable person in the employee's position would have felt compelled to resign" constitute tangible employment action. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 (2004). Plaintiff has offered sufficient proof for a jury to conclude that Mr. Monteverde was her supervisor and that his conduct, if true, was sufficiently severe to compel a reasonable person to resign. There is nothing else she needs to show to impute Mr. Monteverde's conduct to Faruqi & Faruqi.

Defendants' invocation of the *Faragher/Ellerth* doctrine is misguided. Together, *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) hold that "*if no tangible employment action is taken*, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised

---

[1] Especially because the alleged conduct occurred in the office itself, and as an outgrowth of the annual firm party.

reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance*, 133 S. Ct. at 2437 (emphasis added). As explained above, that does not apply to this case because, if the jury believes Ms. Marchuk, they may conclude that tangible employment action was taken. And even if they do not, a *Faragher/Ellerth* defense is Defendants' burden. I cannot say as a matter of law that they have carried it.

The motion for JMOL on Plaintiff's Title VII discrimination claim (Count Three of the Complaint), is denied.

## 2.  **NYSHRL Hostile Work Environment Claims (Complaint, Count Two)**

"Hostile work environment claims under both Title VII and the [New York State Human Rights Law ("NYSHRL")] are governed by the same standard." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013). There are two important distinctions, however. First, unlike federal law, New York state law permits individual liability. *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004). Second, an employer is never strictly liable for the conduct of employees, even if the harassing employee is a Plaintiff's supervisor. *Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y. 2d 684, 687 (1985). An employer is only liable for conduct that it encouraged, condoned, or expressly or impliedly approved. *Id.*

In this case, Plaintiff has introduced sufficient evidence for a jury to find that Mr. Monteverde created a hostile work environment. However, she has failed to present any evidence to allow a reasonable jury to conclude that Faruqi & Faruqi or its principals, Nadeem and Lubna Faruqi, encouraged, condoned, or approved of the alleged discriminatory conduct. Plaintiff admits that she never complained about Mr. Monteverde to either of the Faruqis. Indeed, she told only one other person at the law firm, Emily Komlossy, about Mr. Monteverde's behavior, and

3

insisted that Ms. Komlossy not say anything to Mr. or Ms. Faruqi. Trial Tr. at 120:18. Plaintiff

informed Ms. Komlossy that Mr. Monteverde had kissed her and grabbed her breast, but her

reaction to Mr. Monteverde's advance was not clear. *Id.* at 761. Ms. Komlossy relayed this

information to Mr. Faruqi. *Id.* at 766. Mr. Faruqi immediately admonished Mr. Monteverde upon

learning of the kissing incident, despite his belief that the encounter may have been consensual.

*See id.* at 825:22-826:2 ("I said, you're never to do this again. I said, you work for me. She

works for me. This is never to happen again. I said, you're never to be socially alone with her. I

said you're not to put yourself in any position where you can compromise yourself with her. I

said, you're never to do that again.").

        It is undisputed that this was the extent of either Faruqi's alleged knowledge of

the subject until Plaintiff filed her lawsuit. Based on this evidence, no reasonable juror could find

that Mr. or Ms. Faruqi, or the Faruqi & Faruqi law firm, encouraged, condoned or approved of

Mr. Monteverde's alleged conduct. Accordingly JMOL is granted with respect to the Faruqi &

Faruqi law firm, and with respect to Nadeem and Lubna Faruqi in their individual capacities.

JMOL is denied with respect to Mr. Monteverde.

### 3.  **NYCHRL Hostile Work Environment Claims (Complaint, Count One)**

        The New York City Human Rights Law ("NYCHRL") is somewhat more

complicated, as its legislative history indicates that it was intended to be construed liberally, and

in some cases more broadly, than Title VII or state law. *See Mihalik v. Credit Agricole

Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). For example, a hostile work

environment claim under city law only requires a plaintiff to show that she was treated less well

because of her gender; she does not need to show that the unwelcome conduct was "severe" or

"pervasive." *Id.* And unlike state law, New York City law permits an employer to be held

4

vicariously liable for an employee's conduct if the employee is the plaintiff's supervisor. *See* NYCHRL § 8-107(13)(b)(1-3). Under this standard, Plaintiff has offered sufficient evidence for a juror to find Mr. Monteverde and the Faruqi & Faruqi law firm liable.

But the law is not so broad that it imposes strict liability on an individual for simply holding an ownership stake in a liable employer. None of the cases cited by Plaintiff, nor any cases that this Court is aware of, go that far. Generally, when courts permit cases to proceed against individuals under the NYCHRL, it is because "they participate in the conduct giving rise to a discrimination claim." *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (quoting *Sowemino v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999)). In a 2013 opinion, Judge Castel dismissed NYCHRL discrimination claims against Attorney General Eric Schneiderman and the Attorney General's Director of Human Resources Robert Pablo because the plaintiff had failed to show that they "participated in the discriminatory conduct," even though each one clearly had the power to make personnel decisions.[2] *Morgan v. NYS Atty. Gen.'s Office*, No. 11-cv-9389 (PKC), 2013 WL 491525 (Feb. 8, 2013).

The case law addressing individual liability under the NYCHRL is undeveloped. However, it cannot be the case, as Plaintiff argues based on the naked text of the statute, that liability attaches to a company's shareholder in his individual capacity without any inquiry into his personal culpability, as such a reading would be inconsistent with state corporate law. "The law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability." *Walkovszky v. Carlton*, 18 N.Y. 2d 414, 417 (1966). Plaintiff in this case must therefore prove at least some minimal culpability on the part of Nadeem and Lubna Faruqi. *See Lewis v. Triborough Bridge and Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y.

---

[2] The text of the statute classifies individuals with power to make personnel decisions as employers in addition to those who have an ownership stake in the business.

1999) ("[A] supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under [the human rights laws.]"). As explained in the previous section, she has not carried that burden.

JMOL is granted on Count One with respect to Mr. and Ms. Faruqi in their individual capacities. JMOL is denied with respect to Mr. Monteverde and the Faruqi & Faruqi law firm.

### 4. Front Pay

Front pay damages "cannot be unduly speculative." *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992). Its purpose is to make the victim whole, and "should not place the plaintiff in a better position than [s]he would have occupied had [s]he not been fired." *Chrisholm v. Mem. Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 577 (S.D.N.Y 2011).

In this case, Plaintiff's primary evidence to support front pay damages is the testimony of a legal recruiter who attempted to estimate how much a fourth-year associate from a top 20 law school would earn in the lateral market. The evidence has some glaring holes in it. For example, the expert made no inquiry into Faruqi & Faruqi's pay structure, so he had no foundation for estimating how much she might expect to earn had she stayed at Faruqi & Faruqi. Nor, without a salary history, could he form a reliable upon what she might expect from another firm upon exiting Faruqi & Faruqi. The recruiter also did not inquire into the turnover rate of Faruqi associates, nor any reasonable expectation of tenure, which renders Plaintiff's claim for four years of front pay speculative. The expert had no knowledge about the careers that outgoing Faruqi & Faruqi attorneys were able to secure. He made no inquiry into the types of jobs Plaintiff was seeking, which is particularly problematic because he based his calculation on Plaintiff transitioning to another firm that does similar work, despite Plaintiff's own admission that she

6

had no desire to work in that practice area. Trial Tr. at 271:8-21. And the variance in his projected salary range is nearly 100 percent ($85,000 to $160,000). *Id* at 1140:17.

Plaintiff has offered little evidence apart from the legal recruiter that would allow a jury to calculate front pay, either. For example, she has offered no evidence that she would have earned a raise at Faruqi & Faruqi where, as a plaintiff's class action firm, compensation is largely based on the firm's performance, which had become unprofitable. She has offered no evidence that she would have even continued working at Faruqi & Faruqi had the alleged sexual harassment not occurred, nor has she offered any evidence about the average length of associate tenure. The only tangible evidence she has offered is the salary of an associate four years her senior in the firm's Delaware office, who performed specialized work as a Delaware local counsel. That is not a good comparison.

I fear that, without tangible evidence in the record, there is significant risk that any front pay award will be largely speculative. However, rather than dismiss Plaintiff's claim for front pay damages at this stage, a better course is to defer determination of the issue until after verdict, and to require the jury to identify in their verdict the portion of any damages award attributed to Plaintiff's front pay claim. Accordingly, the determination of this aspect of Defendants' motion is reserved.

## 5. **Back Pay**

A plaintiff may recover for lost salary between the date of the alleged discrimination and the date of judgment if her working conditions were so intolerable that a reasonable person would have felt compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir.

7

1997)). Plaintiff has offered sufficient proof for a jury to find that in this case. JMOL is therefore denied with respect to back pay damages.

## 6.  Retaliation under Title VII and NYSHRL (Complaint, Count Four)

Plaintiff has alleged that, as a result of her lawsuit, Defendants unlawfully retaliated against her by filing defamation and tortious interference counterclaims and issuing a press release about those counterclaims. In order to prove unlawful retaliation under Title VII and the NYSHRL,[3] a plaintiff must prove three elements, each by a preponderance of the evidence:

1) Plaintiff engaged in a protected activity to oppose an unlawful discriminatory practice;

2) Plaintiff suffered an adverse employment action; and

3) Plaintiff's protected activity was the but-for cause of the alleged adverse action by the employer.

*See Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012); *Univ of Texas Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2534. Plaintiff has failed to satisfy any of the three elements.

First, although it is true that a Title VII lawsuit ordinarily qualifies as a protected activity if the plaintiff has a good faith, reasonable believe that the defendants' actions violated the law, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013), Ms. Marchuk's complaint was anything but ordinary. Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8(a)'s notice pleading standard, "[s]pecific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). On March 12, 2013, Plaintiff filed a 22-page complaint containing every salacious detail elicited during the trial and many more that weren't. It was as replete with incendiary

---

[3] Retaliation under NYSHRL tracks the requirements of Title VII. *See Giudice v. Red Robin Int'l, Inc.*, 555 Fed. App'x 67, 68 (2d Cir. 2014).

language and vituperative attacks as any complaint I have seen. Had Defendants moved to strike the complaint earlier, I would certainly have done so. Plaintiff is represented by experienced counsel who know well what a pleading should contain, and the decision to file this unprofessional document thus reflects an intent to extend the litigation from the courts to the press. If the character of pleadings can remove a Title VII lawsuit's "protected activity" status, then this pleading did so.

In addition, Plaintiff cannot show that the counterclaims and corresponding press release constituted adverse employment action. To qualify, an action must create "a materially adverse change in working conditions more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2010). Although the forms of actionable conduct have expanded in recent years beyond merely hiring, firing, failing to promote, and reassignment, *see Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 60, at least some circuits have definitively held that an employer's post-termination counterclaim is not actionable retaliation under Title VII.[4] *See Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528 (5th Cir. 2003), *cert. denied*, 540 U.S. 817 (2003); *cf. Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (explaining that, except in rare cases, conduct within the scope of litigation is not a basis for a retaliation claim.). *But see Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008) (allowing retaliation counterclaims to proceed in an FLSA action where the court found the counterclaims to be "completely baseless" and made in bad faith.).

The text of Title VII's antiretaliation provision says that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice

[4] The Second Circuit has not expressly decided the issue.

9

by this chapter." 42 U.S.C. § 2000e-3(a). In this case, Ms. Marchuk had not been Defendants' employee for more than a year by the time the counterclaims were filed. By then, she was working at a different job in a different field in a different state. Defendants lacked control over any aspect of Ms. Marchuk's working conditions, and indeed Ms. Marchuk does not identify any aspect of her working conditions that changed after the counterclaim was filed. The counterclaims thus did not constitute adverse employment action under Title VII.[5]

But even if post-resignation counterclaims could form the basis for a Title VII retaliation claim, they would not in this case because no reasonable juror could find that Defendants' counterclaims were completely baseless given the facts in the record. The evidence indicates that a copy of the complaint was scanned approximately 45 minutes after being filed with the court on a scanner that did not belong to Defendants, by someone who knew the e-mail addresses of Faruqi & Faruqi clients, opposing counsel, and Mr. Monteverde's wife. Trial Tr. at 960:18-961:12. The universe of individuals with such knowledge, who would also have been aware of the complaint's existence so soon after its filing, is small. Regardless of whether Plaintiff or her agent in fact sent the e-mails that precipitated the counterclaims, Defendants clearly had a good faith basis for believing that they did. Plaintiff's Title VII and NYSHRL retaliation claims therefore fail as a matter of law. *See Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F.Supp.2d 827, 833–835 (N.D.Ill.2006) (holding that an employer's counterclaim, if not baseless, cannot support a claim for retaliation).

JMOL is granted with respect to the Title VII and NYSHRL retaliation claims.

---

[5] In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Supreme Court found that Title VII's protections extend to former employees as well. However, the plaintiff in that case claimed to have suffered from very specific adverse action: he applied to another job but was not hired because the defendants gave him a negative reference. In contrast, Ms. Marchuk's alleged harm is purely hypothetical: if she were to leave her job at some point in the future and apply to a different, unspecified job, she would be some measure less likely to be hired for that job.

### 7. Retaliation under NYCHRL (Complaint, Count Four)

As with discrimination, the NYCHRL's protections against retaliation are intended to be broader than its federal and state counterparts. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 112 (2d Cir. 2013). City law requires a plaintiff to show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *Id.* If a defendant offers a legitimate reason for its conduct, the burden shifts back to the plaintiff to show that the proffered reason was pretextual or motivated at least in part by an impermissible motive. *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 456 (E.D.N.Y. 2013).

As explained in Part 6, *supra*, Defendants had a rational basis for bringing their defamation and tortious interference counterclaims against Ms. Marchuk because they believed in good faith that that Ms. Marchuk had disseminated her complaint outside the judicial process. Plaintiff argues in response that the claims were nevertheless motivated in part by an impermissible motive because they made Plaintiff less likely to pursue her counterclaims and were likely to discourage others from bringing similar lawsuits in the future. *See Williams v. New York City Housing Auth.*, 61 A.D. 3d 62, 70-71 (1st Dep't 2009) ("Retaliation is to be weighed in a context-specific assessment of whether conduct had a 'chilling effect' on protected activity."). But Plaintiff has not presented credible evidence that the counterclaims in fact deterred Plaintiff from maintaining her lawsuit or deterred anybody else from filing a lawsuit.

"At some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee." *United States v. New York City Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996). Every counterclaim necessarily reduces the expected value of a plaintiff's recovery by increasing the

11

cost and duration of litigation and raising the specter of recovery against the plaintiff. That fact alone cannot make legitimate, good-faith counterclaims impermissible. To hold that would be to hold that whenever a defendant is sued for sexual harassment, city law can nullify a defendant's right to recover under state law. New York City does not have that power. *See* N.Y. Const. art. IX, § 2(c) (McKinney's 2002) ("every local government shall have power to adopt and amend local laws *not inconsistent* with the provisions of this constitution or any general law . . . ") (emphasis added); *Wallach v. Town of Dryden*, 23 N.Y. 3d 728, 743 (2014) ("Under the preemption doctrine, a local law promulgated under a municipality's home rule authority must yield to an inconsistent state law as a consequence of the untrammeled primacy of the Legislature to act with respect to matters of state concern.") (internal quotations omitted).

Apart from those legal shortcomings, important practical complications preclude Plaintiff from proving damages here. The crux of Plaintiff's retaliation theory is that Defendants' counterclaims and corresponding press release exposed her and her lawsuit to unwelcome attention that has hurt her employment prospects in order to dissuade Plaintiff from continuing her lawsuit. Defendants argue that she was not harmed because she intended to, and did,[6] attract the media's attention from the outset by writing her complaint the way she did. This issue cannot possibly be litigated fairly without introducing Plaintiff's complaint of March 13, 2013, and introduction of the complaint would be highly prejudicial to Defendants under Fed. R. Civ. P. 403 for the reasons explained in Part 4, *supra*. Thus, even if Plaintiff could ordinarily make out a

---

[6] News outlets were reporting on Plaintiff's lawsuit within hours of its filing, weeks before Defendants filed their counterclaims. *See* David Lat, *Lawsuit of the Day: A Super-Salacious Suit against a 'Legend' of the Bar*, Above the Law (Mar. 13, 2013), http://abovethelaw.com/2013/03/lawsuit-of-the-day-a-super-salacious-suit-against-a-legend-of-the-bar/; Martha Neil, *Ex-associate Files Sexual Harassment Suit against Faruqi & Faruqi Firm and Prominent Partner*, ABA Journal (Mar. 14, 2013), http://www.abajournal.com/news/article/ex-associate_files_sexual_harassment_suit_against_faruqi_firm_and_prominent/.

12

retaliation claim under NYCHRL, she will not be allowed to use her own breach of the federal

rules to her advantage in this case.

> JMOL is granted as to Plaintiff's retaliation claim under NYCHRL.

**8.** **Defamation (Complaint, Count Five)**

> In order to recover for defamation in New York, Ms. Marchuk must prove five

elements by a preponderance of the evidence:

> 1) Defendants made a statement that tends to expose Ms. Marchuk to public
>    hatred, contempt, ridicule, or disgrace. A statement that is merely unpleasant,
>    offensive, embarrassing, or hurts Ms. Marchuk's feelings is not necessarily
>    defamatory.
>
> 2) Defendants published the statements to somebody other than Ms. Marchuk.
>
> 3) The statements were false.
>
> 4) Defendants were at least negligent in determining whether the statements
>    were, in fact, true.
>
> 5) Ms. Marchuk suffered "special damages," meaning specific, quantifiable
>    harm, or else the statements constituted defamation *per se*, meaning, in this
>    case, that they tended to injure Ms. Marchuk in her profession.

*See Thai v. Cayre Grp. Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010); *Celle v. Filipino*

*Reporter Enters., Inc.*, 209 F.3d 163, 179 (2d Cir. 2000). Defendants do not contest that they

published a press release contemporaneously with their counterclaims against Ms. Marchuk. And

Ms. Marchuk has offered sufficient proof for a jury to find for her on the first and third elements

of defamation as well. However, her defamation claim must fail because at the conclusion of her

case she has not proven the particular requirements for damages.

> *Per se* damages with respect to professional reputation are limited to statements

that describe the plaintiff as unfit for "the proper conduct of the business, trade profession or

office itself. The statement must be made with reference to a matter of significance and

importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities." *Liberman v. Gelstein*, 80 N.Y. 2d 429, 435 (1992). In their press release, the Defendants stated that Ms. Marchuk was "obsessed" with Mr. Monteverde and fabricated her allegations and distributed copies of her complaint in order to "extort" Defendants. These statements are not defamatory *per se* because they speak to Ms. Marchuk's personal character, rather than her professional competence directly. Further, New York courts addressing this very issue have found that characterizing a plaintiff's lawsuit as "extortion" is not actionable. *See Melius v. Glacken*, 94 A.D. 3d 959, 959-60. (2d Dep't 2012) ("[A] reasonable listener would have believed that calling the plaintiff an 'extortionist' who is seeking 'to extort money' was conveying the defendant's opinion as to the merits of the plaintiff's lawsuit and was not a factual accusation of criminal conduct.").

Neither has Plaintiff proven special damages. "Special damages consist of the loss of something having economic or pecuniary value which must flow *directly* from the injury to reputation caused by the defamation." *Celle*, 209 F.3d at 179. "General testimony regarding humiliation and loss of reputation" is insufficient, *Sharratt v. Hickey*, 20 A.D. 3d 734, 736 (3d Dep't 2005), and special damages are unavailable unless the plaintiff describes her economic damages "with sufficient particularity to identify actual losses." *Celle*, 209 F.3d at 179. Plaintiff's only evidence on economic damages comes from Michael Lord, a legal recruiter. As explained in Part 4, *supra*, Mr. Lord's testimony engages in a great deal of speculation and falls well short of being sufficiently particular to identify Plaintiff's actual losses from the press release. When asked whether Mr. Lord would have taken Ms. Marchuk as a client *before* the press release issued, he replied, "[i]t's very likely that I would have turned her down, because she had three months of experience and, also, because she was suing her firm." Trial Tr. at

14

1173:23-25. He did not explain, let alone quantify, how the press release itself changed Lord's already bleak forecast for Ms. Marchuk's career outlook.

For these reasons, JMOL is granted with respect to Plaintiff's defamation claim.

## CONCLUSION

Defendants' motion for judgment as a matter of law is granted as to all Defendants on Plaintiff's claims for retaliation and defamation, as to Lubna Faruqi, Nadeem Faruqi, and Faruqi & Faruqi LLP on Plaintiff's NYSHRL hostile work environment claim, and as to Lubna Faruqi and Nadeem Faruqi on Plaintiff's NYCHRL hostile work environment claim. Defendants' motion is denied with respect to Plaintiff's Title VII hostile work environment claim, Plaintiff's request for back-pay, Plaintiff's NYSHRL hostile work environment claim as to Juan Monteverde only, and Plaintiff's NYCHRL hostile work environment claim as to Juan Monteverde and Faruqi & Faruqi LLP only. Decision is reserved with respect to Plaintiff's request for front-pay damages.

As a result, the case will proceed against Defendant Monteverde and Defendant Faruqi & Faruqi, LLP only, limited to Plaintiff's claim of a hostile work environment.

The Clerk shall mark the motion (Doc. No. 141) terminated.

SO ORDERED.

Dated:     New York, New York
           January 27, 2015

ALVIN K. HELLERSTEIN
United States District Judge

15