UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                           :

ALEXANDRA MARCHUK,                   :     13 CV 1669 (AKH)
                                           :

                Plaintiff,      :     ECF Case
                                           :

       -against-                :
                                           :

FARUQI & FARUQI, LLP,          :
JUAN E. MONTEVERDE, NADEEM FARUQI   :
and LUBNA FARUQI,              :
                                         :

               Defendants.     :
------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

Dated:  February 20, 2015
       New York, New York

**ROTTENBERG LIPMAN RICH, P.C.**

Harry W. Lipman
Thomas E. Chase
Jonathan S. Hershberg
New York, New York 10017
T: (212) 661-3080
hlipman@rlrpclaw.com
tchase@rlrpclaw.com
jhershberg@rlrpclaw.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................i-iii

PRELIMINARY FACTS ..................................................................................................2

FACTS...........................................................................................................................2

ARGUMENT..................................................................................................................6

    A.    ATTORNEY FEE AWARDS UNDER THE NYCHRL ........................................6

    B.    THE COURT OF APPEALS DECIDES *MCGRATH V. TOYS "R" US.*................7

    C.    THE NEW YORK CITY COUNCIL LEGISLATIVELY REVERSES MCGRATH ...............................................................................................................8

    D.    THE COURT SHOULD APPLY THE LODESTAR METHOD TO DETERMINE THE APPROPRIATE AMOUNT TO AWARD AS ATTORNEYS' FEES AND COSTS..............................................................................................................9

        1.    Plaintiff is the Prevailing Party and therefore Entitled to Recover Her Reasonable Attorneys' Fees.......................................10

        2.    Time Spent by Plaintiff's Counsel on this Matter was Reasonable..........11

        3.    The Requested Hourly Rates Are Reasonable.................................14

            i.    Mr. Lipman is a Highly Experienced Litigation Attorney...........15

            ii.    Mr. Chase is a Highly Experienced Litigation Attorney.............16

            iii.    Mr. Hershberg is an experienced labor and employment attorney..17

        4.    RLR made a Significant Financial Commitment to this Case With No Guarantee of any Recovery...........................................19

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

Blum v. Stenson,
465 U.S. 886 (1984) ....................................................................................14, 15

Chin v. RCN Corp.,
No. 08 Civ. 7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010)...................................18

City of Detroit v. Grinnell Corp.,
560 F.2d 1093 (2d Cir. 1977) ................................................................................15

Douyon v. N.Y. Medical Health Care, P.C.,
2014 WL 4948121, *7 (S.D.N.Y. 2014) ...................................................................14

Gagne v. Maher,
594 F.2d 336 (2d Cir. 1979) ................................................................................11

Gierlinger v. Gleason,
160 F.3d 858 (2d Cir. 1998).................................................................................15

Gusman v. Unisys Corp.,
986 F.2d 1146 (7th Cir. 1993)...............................................................................18

Goldberger v. Integrated Resources, Inc.,
zf209 F.3d 43 (2d Cir. 2000) ................................................................................15

Loeffler v. Staten Island Univ. Hosp.,,
582 F.3d 268 (2d Cir. 2009) ...................................................................................6

Magnoni v. Smith & Laqurcia, LLP,
Case No. 07-cv-09875 (S.D.N.Y. 2010)...................................................................16

McGrath v. Toys "R" Us, Inc.,
3 N.Y.3d 421, 788 N.Y.S.2d 281 (2004)................................................................7, 8

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
715 F.3d 102 (2d Cir. 2013) ...................................................................................7

Missouri v. Jenkins,
U.S. 274 (1989).............................................................................................15

New York State Ass'n for Retarded Children, Inc. v. Carey,
711 F.2d 1136 (2d Cir. 1983)................................................................................12

O'Connor v. Smith & Laquercia, LLP,
Case No. 08-cv-04559 (E.D.N.Y. 2010)...................................................................16

Pascutti v. N.Y. Yankees,
108 F.Supp.2d 258 (S.D.N.Y. 2000)……………………………………………………………11

Perdue v. Kenny A.,
559 U.S. 542, S.Ct. 1662 (2010) ……………………………………………………………9, 14

Quaratino v. Tiffany & Co.,
166 F.3d 422 (2d Cir. 1997)…………………………………………………………………...14

Reiter v. MTA N.Y. City Trans. Auth.,
457 F.3d 224 (2d Cir. 2006)……………………………………………………………….…...15

Rozell v. Ross-Holst,
576 F. Supp. 2d 527 (S.D.N.Y. 2008)……………………………………………………....18, 19

Shariff v. Alsaydi,
2013 WL 4432218, *5 (E.D.N.Y. Aug. 15, 2013)……………………………………………11

Simmons v. N.Y. City Transit Auth.,
575 F.3d 170 (2d Cir. 2009)………………………………………………………...…..14, 15

Velazco v. Columbus Citizens Found.,
__ F.3d __, 2015 WL 613035 (2d Cir. Feb. 13, 2015) …………………………………………7

Vikhu v. City of N.Y.,
No. 06 CV 2095, 2009 WL 1851019 (E.D.N.Y. June 26, 2009)……………………………18, 19

Walter v. Wells Fargo & Company, et al,
Case No. 10-cv-07491 (S.D.N.Y. 2011)………………………………………………………17

Williams v. New York City Housing Authority,
61 A.D.3d 62 (1st Dept. 2009)…………………………………………………………………8

## PRELIMINARY STATEMENT

Plaintiff, Alexandra Marchuk, by and through her counsel Rottenberg Lipman Rich, P.C. ("RLR"), submits this memorandum of law in support of her motion for an award of attorneys' fees and costs. On February 5, 2015 the jury returned a verdict against defendants Juan Monteverde ("Mr. Monteverde") and Faruqi & Faruqi, LLP ("F&F"), and awarded Ms. Marchuk $140,000 on her claims under the under the New York City Human Rights Law. Administrative Code of the City of New York, § 8-107 et seq. (the "NYCHRL"). As the "prevailing party" under the NYCHRL, Plaintiff now moves the Court for an award of attorneys' fees in the amount of $1,379,795.58 and costs of $51,011.58 pursuant to NYCHRL § 8-502(g).

## FACTS

Ms. Marchuk first consulted RLR about representing her in this matter in September 2012. See Declaration of Harry W. Lipman, Esq. date February 19, 2015 (the "Lipman Decl."), ¶ 2. With limited financial resources, Plaintiff required legal representation on a contingency basis. Plaintiff initially sought representation from Davis & Gilbert, LLP, which declined the representation due to conflicts. Guy Cohen, a Davis & Gilbert partner, referred Ms. Marchuk to Harry W. Lipman, a partner at RLR. Id.

Initially, several aspects of Ms. Marchuk's claims appeared to reduce the attractiveness of a contingency representation. Ms. Marchuk had resigned from F&F and therefore would have to establish that she was constructively terminated in order to recover back pay and front pay. Furthermore, Ms. Marchuk had worked at F&F for only three months prior to her separation; therefore, her limited employment and compensation history made it more difficult to prove that she was entitled to recover significant front pay. Her claims to back pay and front pay, moreover, became more difficult when she obtained comparable replacement

2

employment in November 2012. Finally, it was reasonable to assume that a suit against an established New York City litigation law firm would be aggressively opposed and potentially protracted. Lipman Decl. ¶ 3.

Other aspects of Ms. Marchuk's claims, however, cried out in favor of pursuing them. She complained of being sexually propositioned by Mr. Monteverde, a senior F&F partner, from almost her first day as an associate at F&F. She complained that Mr. Monteverde's inappropriate conduct was open and notorious at F&F, but that it was willingly tolerated because he generated significant revenue for the Firm. Mr. Monteverde's inappropriate conduct culminated in a forceful sexual encounter that left Ms. Marchuk physically injured and emotionally traumatized. The trajectory of her life, moreover, was permanently altered when she was unable to find replacement employment for a substantial period of time. Consequently, an employer who should have been most knowledgeable about and sensitive to its legal obligations to its employees – a plaintiff-side law firm that even boasts on its website of having being "a recognized leader in protecting the rights of employees" – had abdicated its obligations to one of its most junior employees to placate the whims of a profitable partner. Lipman Decl. ¶ 4.

RLR had confidence in Ms. Marchuk's case, believed that her claims deserved to be heard, and therefore agreed to represent Ms. Marchuk on a contingency basis. In October 2012, RLR sent a detailed "demand" letter to F&F outlining Ms. Marchuk's allegations against the Firm and seeking to discuss a consensual resolution without resort to litigation. RLR was contacted by F&F's counsel at that time, a Philadelphia lawyer by the name of Jennifer Bell, but despite RLR's several attempts to kick start negotiations with F&F, F&F refused to engage with RLR in settlement discussions. Lipman Decl. ¶ 5.

In March 2013, RLR filed a summons and complaint in the Southern District of New York setting forth Ms. Marchuk's claims against Defendants. Because of the sexual nature of her allegations as well as Defendants' somewhat notorious reputation within the class action plaintiffs' bar, Ms. Marchuk's complaint received extensive media coverage. Neither Plaintiff nor RLR ever took any action to publicize the personal and highly embarrassing allegations in her complaint. Lipman Decl. ¶ 6. Apparently, the complaint was flagged as a filing of interest by "Courthouse News," or one or more of the other services that monitor court filings and immediately alert subscribers (including media outlets) concerning potentially newsworthy cases. See http://courthousenews.com. Id.

Defendants responded aggressively to the Complaint. Defendants filed $15 million counterclaims, alleging that Plaintiff had maliciously distributed her complaint to the Firm's clients, opposing counsel and even to Mr. Monteverde's wife. Defendants claimed that they lost valuable business because of Ms. Marchuk's purported wrongful actions. Defendants further launched a media campaign promoting their counterclaims, including using the public relations firm Rubinstein Associates to issue a press release and promote the allegations in the Counterclaims to numerous news outlets. Lipman Decl. ¶ 7.

RLR was not obligated to defend Ms. Marchuk against the Counterclaims, but we did so because defense of the Counterclaims was necessary to our effective representation of Ms. Marchuk on her claims against Defendants. Ms. Marchuk did not have the financial means to hire counsel to represent her on the Counterclaims; so, to refuse to represent Ms. Marchuk in their defense would have provided Defendants with enormous leverage in the litigation. Lipman Decl. ¶ 8. As part of RLR's defense against the Counterclaims, RLR and Ms. Marchuk decided to amend Ms. Marchuk's complaint to assert retaliation and defamation claims against

4

Defendants. If Defendants were going to continue to prosecute their frivolous $15 million Counterclaims against Ms. Marchuk, they needed to understand that they would face potential legal liability for doing so. Defendants voluntarily withdrew their counterclaims in September 2013. Lipman Decl. ¶ 9.

Defendants defended themselves against Ms. Marchuk's claims for employment discrimination vigorously, to say the least. Defendants' first primary litigation counsel, Epstein, Becker & Green, P.C. ("EBG"), staffed the case with four attorneys: founding partner Ronald Green, senior partner Barry Asen, senior associate Victoria Sloan, and junior associate Darren Luft. At least two EBG attorneys attended <u>every</u> deposition in the case, with the three senior EBG attorneys attending every party deposition taken. Lipman Decl. ¶ 10.

Discovery was extensive: both sides (but predominantly Defendants) served numerous subpoenas for documents and testimony. The parties took a total of 33 depositions, including the depositions of four expert witnesses as well as second-day depositions of each of the individual defendants required by Court order because of Defendants' initial improper refusal to testify and produce documents regarding certain relevant financial matters. <u>Id</u>. There were numerous discovery disputes that required numerous letters and emails between counsel, and joint letters to the Court.

There was also extensive pretrial motion practice, including defendants' motion to compel a Rule 35 examination, motion to withdraw their counterclaims, two motions for partial summary judgment, and numerous motions for reconsideration of Court orders. Lipman Decl. ¶ 11; <u>see</u> Ex. B, Case Docket (document nos. 25, 31, 35, 43, 47, 52, 61, 70, 91, 110). In August 2014, Defendants replaced EBG with Bursor & Fisher, P.A. ("B&F"). Lipman Decl. ¶ 12.

The case was ultimately tried to a jury beginning on January 12, 2015 and concluded on February 5, 2015.  Prior to, and during, the trial Defendants filed 10 motions in limine, a motion to bifurcate the trial, a motion to strike the testimony of Kerrianne Goodwin, and three different motions for judgment as a matter of law.  Lipman Decl. ¶ 13; see Ex. B, Case Docket (document nos. 113, 115, 116, 135, 141, 152, 161).  Scott Bursor led Defendants' presentation of their defense, but he was assisted on the papers and in court by at least five other Bursor & Fisher attorneys.  Lipman Decl. ¶ 13.

## ARGUMENT

### A.    Attorney Fee Awards Under the NYCHRL

In applying NYCHRL's fee award provisions, the Court may consider attorney fee award jurisprudence applying similar federal attorney fee provisions as only the floor for attorney fee awards under the NYCHRL.  In 2005 the New York City Council passed the Local Civil Rights Restoration Act of 2005 (the "NYCHRL Restoration Act").  The NYCHRL Restoration Act specifically provides that the NYCHRL is to be liberally construed so as to provide more favorable employment protections to employees than Title VII of the Civil Rights Act of 1964:

> The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes hereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Consequently, "[t]here is now a one-way ratchet" that elevates the protections of the NYCHR above those of Title VII.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ("[i]nterpretations of New York state or federal statutes with similar wording may be used to aid interpretation of New York City Human Rights Law, viewing similarly worded provisions of

federal and state civil rights law as a floor below which the City's Human Rights law cannot fall"); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013); Velazco v. Columbus Citizens Found., __ F.3d __, 2015 WL 613035 (2d Cir. Feb. 13, 2015).

**B.      The Court of Appeals Decides _McGrath v. Toys "R" Us_**

Particularly important here, the New York City Council passed the NYCHRL Restoration Act specifically in response to the New York State Court of Appeals' decision in McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 788 N.Y.S.2d 281 (2004).  In McGrath, the Second Circuit had certified several questions regarding the NYCHRL's attorneys' fees provision for review by the New York State Court of Appeals.  On certification, the Court of Appeals held that the NYCHRL's attorney fee provisions are to be applied similarly to established federal law regarding attorney fee awards.  The facts in McGrath concerned an attorney fee application in a case where the jury awarded only nominal damages.  After a nine-day jury trial in the United States District Court for the Southern District of New York,  the jury returned a verdict in favor of the Toys "R" Us employees but awarded each plaintiff nominal damages of only one dollar.  The plaintiff's attorneys then applied for an award of attorneys' fees in the amount of $206,000. Id. at 426, 788 N.Y.S.2d at 282.  Despite the plaintiffs' lack of financial success, the federal district court applied the traditional lodestar methodology and awarded plaintiff's counsel $193,551 pursuant to the NYCHRL's "prevailing party" attorneys' fee provision.  N.Y.C. Admin. Code 8-502(g).

The Court of Appeals held that under the NYCHRL the jury's award of only nominal damages should have reduced or barred the plaintiffs' right to recover attorneys' fees. The Court reasoned that despite established United States Supreme Court precedent holding that

fees are not recoverable when plaintiffs recover only nominal damages, the New York City

Council had never clarified the NYCHRL's similar attorney fees provisions:

> The City Council has not acted to alter the attorney's fee provision
> in the 12 years since Farrar.  And, perhaps most significantly, long
> before Farrar, the Supreme Court had emphasized in Hensley that
> the degree of success obtained was the critical factor in
> determining a reasonable award in a case where plaintiff obtained
> only limited success. If the City Council disagreed with that
> approach, it had ample opportunity to say so.

Id. at 434, 788 N.Y.S.2d at 287-88.

## C.    The New York City Council Legislatively Reverses McGrath

Expressly responding to the McGrath decision, the New York City Council

enacted the NYCHRL Restoration Act the following year.  In Williams v. New York City

Housing Authority, 61 A.D.3d 62, 73-74 (1st Dept. 2009), the Appellate Division, First

Department reviewed the legislative history relating to the NYCHRL Restoration Act and

concluded:

> The City Council responded to the premise set forth in McGrath,
> legislatively overruling McGrath by amending the construction
> provision of Administrative Code § 8-130, and putting to an end
> this view of the City HRL as simply mimicking its federal and
> state counterparts.

Consequently, under the NYCHRL, as amended by the NYCHRL Restoration Act, parties that

prevail on their claims are entitled to recover their reasonable attorneys' fees regardless of

doctrines developed under federal law that may permit fees to be reduced based on the

assessment of the parties' relative success or consideration of the specific financial recovery

obtained.

8

**D.  The Court Should Apply the Lodestar Method to Determine
the Appropriate Amount to Award as Attorneys' Fees and Costs**

Section 8-502(g) of the NYCHRL provides:

> In any civil action commenced pursuant to this section, the court,
> in its discretion, may award the prevailing party costs and
> reasonable attorney's fees.  For the purposes of this subdivision,
> the term "prevailing" includes a plaintiff whose commencement of
> litigation has acted as a catalyst to effect policy change on the part
> of the defendant, regardless of whether that change has been
> implemented voluntarily, as a result of a settlement or as a result of
> a judgment in such plaintiff's favor.

The Court should calculate Plaintiff's attorneys' fee award based on the assumption that the fee

award established via the lodestar method is reasonable.  Under the lodestar method, a

reasonable fee award is determined by multiplying the number of hours expended on a

representation by the reasonable hourly rate prevailing in the jurisdiction in which the legal work

was performed.

In <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 130 S.Ct. 1662 (2010), the United States

Supreme Court re-affirmed that the lodestar method continues to be the preferred method for

determining reasonable attorney fee awards:

> [T]he lodestar approach, was pioneered by the Third Circuit . . .
> and achieved dominance in the federal courts . . . and has, as its
> name suggests, become the guiding light of our fee-shifting
> jurisprudence.
>
> Although the lodestar method is not perfect, it has several
> important virtues. First, in accordance with our understanding of
> the aim of fee-shifting statutes, the lodestar looks to "the prevailing
> market rates in the relevant community.  Developed after the
> practice of hourly billing had become widespread, the lodestar
> method produces an award that *roughly* approximates the fee that
> the prevailing attorney would have received if he or she had been
> representing a paying client who was billed by the hour in a
> comparable case.
>
> Second, the lodestar method is readily administrable and unlike the
> <u>Johnson</u> approach, the lodestar calculation is objective and thus

9

> cabins the discretion of trial judges, permits meaningful judicial
> review, and produces reasonably predictable results. . .
>
> . . . a reasonable fee is a fee that is sufficient to induce a capable
> attorney to undertake the representation of a meritorious civil
> rights case . . . the lodestar method yields a fee that is
> presumptively sufficient to achieve this objective.   Indeed, we
> have said that the presumption is a "strong" one . . .

Id. at 552, 130 S.Ct. at 1672-1673 (citations and quotations omitted).  Accordingly, Plaintiff

respectfully requests that the Court apply the traditional lodestar method in considering her fee

request.

1.   **Plaintiff is the Prevailing Party and therefore**
     **Entitled to Recovery Her Reasonble Attorneys' Fees**

As a threshold matter, Plaintiff obtained substantial success in this matter and is

without question the "prevailing" party under the NYCHRL.  Plaintiff recovered $70,000 in back

pay, entirely compensating her for her approximate 11 months of unemployment.  She recovered

$20,000 in front pay, representing the difference between her salary at her new job and the salary

she might have expected to earn at F&F had she remained employed there for an additional year.

Consequently, the jury made Plaintiff "whole" for approximately two years following her

resignation from F&F, despite the fact that she was employed there for just three months.

Plaintiff also recovered $50,000 in punitive damages against both Mr. Monteverde and F&F,

reflecting that she satisfied the high standard of showing that the Defendants recklessly

disregarded their legal obligations to her.  Lipman Decl. ¶ 14.

Beyond that, Ms. Marchuk's lawsuit spurred F&F to implement formal, firm-wide

training with regard to appropriate workplace conduct:

> Well, I think after the lawsuit, the Faruqis took action by having
> everybody in the firm – not just me – everybody had training . . .
> We had a sensitivity training to be updated on recent law
> developments and the state of employment law in the work
> environment . . .  It was about not making offensive comments, not

10

> commenting on people's appearances, not discussing things of a
> personal nature, safer to discuss only work matters, not having a
> relationship with co-workers – even if mutual reciprocal, that was
> never a good idea – also, not making decisions based on peoples
> race or gender or religion. I'm summarizing. It was a couple
> hours. It was a full training.

Tr. 1540-1541 (testimony of Juan Monteverde). Ms. Marchuk, therefore, clearly effected a

policy change at F&F sufficient to be a "prevailing party" under § 8-502(g) regardless of her

monetary recovery. Lipman Decl. ¶ 15.

Plaintiff is also entitled to recover attorneys' fees for the time her counsel spent

preparing this application. Shariff v. Alsaydi, 2013 WL 4432218, *5 (E.D.N.Y. Aug. 15, 2013)

("Time spent preparing an application for attorney's fees, like other time spent litigating a case,

is compensable if reasonable"), citing Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979); see also

Pascutti v. N.Y. Yankees, 108 F.Supp.2d 258 (S.D.N.Y. 2000). Plaintiff should, therefore, be

awarded her attorneys' fees incurred in preparation of this motion because those fees are

reasonable and indistinguishable from the time otherwise spent litigating this case.

### 2.  Time Spent by Plaintiff's Counsel on this Matter was Reasonable

RLR maintains detailed contemporaneous records of the amount of attorney time

devoted to all client matters. On a daily basis, RLR attorneys maintain detailed notes reflecting

the tasks that they perform for every client and the amount of time they devote to every task.

RLR attorneys are responsible for entering all of their time records for each calendar month into

the firm's time management system, which runs on "TimeSlips" software, a law firm time-

management program developed by Sage Software, Inc. Lipman Decl. ¶ 16. Costs incurred

with respect to a client matter are similarly recorded in TimeSlips as invoices relating to a client

matter are received and approved. RLR follows this practice for billable matters and

contingency matters alike; the attorneys and legal assistants who have worked on Ms. Marchuk's

11

case have followed these practices for the more than two years since it was initiated. Lipman
Decl. ¶ 17; see Ex. A. These records fully meet the requirement to "specify, for each attorney,
the date, the hours expended, and the nature of the work done." New York State Ass'n for
Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

The time spent by RLR attorneys on this case was eminently reasonable. See
Lipman Decl. ¶¶ 7-8, 10-11, 13, 18. Defendants vigorously (and at times more than vigorously)
defended this case from the time that they rebuffed Plaintiff's pre-litigation attorneys' letter, in
October 2012, to the date that the jury returned its verdict against them on February 5, 2015.
Among other things, Defendants asserted and pursued frivolous counterclaims against Ms.
Marchuk for $15 million as part of a litigation strategy driven more by tactical decisions about
how to force Plaintiff (or her counsel) to settle the case than it was by any consideration of the
facts or law. This "shoot first ask questions later" strategy is even touted on the profile page of
Defendants' lead counsel, Ronald Green of EBG. Lipman Decl. ¶ 18; Ex. C ("Preemptive
Employment Litigation: When an Employer's Best Defense is a Good Offense"). So as no not be
completely outgunned, Plaintiff and RLR needed to staff the case with three attorneys and
several paralegals to be able to diligently prosecute this case and timely respond to Defendants'
aggressive defensive efforts. Lipman Decl. ¶ 18.

RLR's billing records are reasonable on their face. Almost every time entry
reflected in RLR's billing records relates to a specific, tangible and time-sensitive task in this
litigation. The majority of time reflected in RLR's time records relates to (1) the preparation of
specific court filings or litigation documents (pleadings, motion papers, correspondence,
discovery demands, discovery responses, expert reports, trial documents, etc.) or (2) the
preparation for, and attendance and participation in, specific and verifiable litigation events

(multiple depositions, court appearances, mediation, settlement conferences, trial). Lipman Decl. ¶ 19.

As set forth above, RLR devoted significant attorney time to prepare for and attend the 33 depositions that were taken in this case. As reflected by the transcripts of these depositions, Defendants had either the same number or, more often, a greater number of attorneys in attendance at every deposition than did Plaintiff. Lipman Decl. ¶ 20. Further, the attorney time reflected in RLR's billing records show, in virtually every entry on each day, a detailed description of the tasks for that day and corresponding, reasonable time spent thereon. There are few, if any, entries that fail to disclose clearly what an attorney or legal assist did, or that suggest that the attorney spent an inordinate amount of time to complete a specific assignment. RLR's billing records contain no "black hole" billing entries of the type that frequently appear in attorney fee requests, for example, where attorneys spend dozens or hundreds of hours conducting "document review" or other undifferentiated tasks, so that it is impossible to determine whether the time was reasonable or not. Lipman Decl. ¶ 21.

RLR, moreover, has even reduced the total hours its attorneys expended on this matter. Among other things, RLR wrote off over 60 hours of time incurred by RLR associate Alexander Spilberg devoted to research of several issues early in the case because we deemed it either excessive or unnecessary. RLR further reduced all of the incidental time devoted to this matter by attorneys and paralegals who were not staffed on the case, resulting in a reduction in fees. Consequently, the remaining fees reflected in the RLR billing summary reflect tangible and identifiable work, reasonably performed on discrete and readily identifiable tasks, and reasonably related to the prosecution of Plaintiff's claims. Lipman Decl. ¶ 22.

Defendants no doubt will argue that Plaintiff's fee and cost award should be reduced in proportion to the claims that she did <u>not</u> recover on. For example, Plaintiff asserted but failed to recover upon claims under Title VII and the New York State Human Rights Law. The law is clear, however, that a plaintiff may recover fees and costs related to unsuccessful claims if those claims share a "common core" of facts with the claims upon which the plaintiff did successfully obtain recovery. <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1997) ("[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones, however, where they are 'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories'"); <u>Douyon v. N.Y. Medical Health Care, P.C.</u>, 2014 WL 4948121, *7 (S.D.N.Y. 2014) ("[t]he law in the Second Circuit is clear that a plaintiff may recover attorney's fees for hours spent on the unsuccessful claims if the claims are inextricably intertwined and involve a common core of facts") (citations and quotations omitted).

The claims upon which Plaintiff failed to recover were inextricably linked to – and incapable of differentiation from – either her successful claims or the defenses she asserted in response to Defendants' frivolous counterclaims. Consequently, the Court should not reduce Plaintiffs' attorneys' fees and costs related to that work.

### 3. The Requested Hourly Rates Are Reasonable

A reasonable hourly rate is one which is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to . . . as the prevailing market rate." <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984); <u>see</u> <u>Perdue</u>, 130 S. Ct. at 1672 (noting that the aim of fee-shifting statutes is to approximate "the prevailing market rates in the relevant community") (citation omitted); <u>Simmons v. N.Y. City</u>

14

Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009) ("district courts are directed to calculate attorneys' fees based on the rates prevalent in the forum in which the litigation was brought"); City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1098 (2d Cir. 1977) (courts look to "the hourly rate normally charged for similar work by attorneys of like skill in the area), rev'd on other grounds, Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000).

Among the factors to be considered in the assignment of hourly rates are the quality of representation and the experience and special skill of the attorney. See Blum, 465 U.S. at 898-99. Rates are awarded at the hourly rate that is current at the time of the award to account for the delay between the time services are rendered and the fees recovered. Reiter v. MTA N.Y. City Trans. Auth., 457 F.3d 224, 232 (2d Cir. 2006); see Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (remanding case for calculation at current, not former, hourly rate even though some delay was attributable to the requesting party) (citing Missouri v. Jenkins, 491 U.S. 274, 284 (1989)).

Here, the fee calculation uses an hourly rate of $500 for RLR partner Harry W. Lipman, $450 for RLR partner Thomas E. Chase, $300 for RLR associate Jonathan S. Hershberg and $180 for RLR legal assistants. These rates are reasonable based on prevailing rates charged by attorneys of similar experience practicing in the United States District Court for the Southern District of New York. Lipman Decl. ¶ 23.

### i. Mr. Lipman is a Highly Experienced Litigation Attorney

Mr. Lipman graduated from Columbia Law School in 1990 and has been actively practicing litigation at the highest level in New York City ever since. He was an associate in the litigation departments at Proskauer Rose LLP and Milbank, Tweed, Hadley & McCloy LLP from 1990 through 1999. He joined RLR in 2000 and has been a name partner in the firm since 2004.

15

At RLR Mr. Lipman has handled numerous complex litigations in New York state court, the federal courts for the Southern and Eastern Districts of New York, and numerous arbitration forums. Mr. Lipman has extensive experience litigating employment and benefit cases. Importantly, his hourly rate of $500 charged in this matter is at or below the rate that RLR charges to numerous paying clients of RLR for his services. Lipman Decl. ¶ 24.

### ii.    **Mr. Chase is a Highly Experience Litigation Attorney**

Mr. Chase graduated from the University of Wisconsin Law School in 1995 and has been actively practicing litigation at the highest level in New York City ever since. He was an associate in the litigation department at Milbank Tweed from the summer of 1994 through 1999. He was then an associate at the prominent plaintiffs' class action firm Bernstein Litowitz Berger & Grossman from 1999 to 2000. Mr. Chase joined RLR in 2001 and became a partner at the firm in 2004. At RLR Mr. Chase has handled numerous complex litigations in New York state court, the federal courts for the Southern and Eastern Districts of New York and numerous arbitration forums. Mr. Chase is also admitted to practice in the state of New Jersey and has worked on numerous matters before the state and federal courts in New Jersey. Importantly, his hourly rate of $450 is the rate that that RLR charges to numerous paying clients of RLR for Mr. Chase's services. Lipman Decl. ¶ 25.

Mr. Chase has extensive experience litigating employment discrimination cases under the complex and overlapping city, state and federal employment discrimination scheme. Among other employment discrimination cases, he represented a law firm defending against two related claims simultaneously brought by employees in the Southern and Eastern Districts of New York in the cases <u>Magnoni v. Smith & Laqurcia, LLP</u>, Case No. 07-cv-09875 (S.D.N.Y. 2010) and <u>O'Connor v. Smith & Laquercia, LLP</u>, Case No. 08-cv-04559 (E.D.N.Y. 2010). Both

of these cases were resolved by bench trials with verdicts in favor of defendants.  Mr. Chase also

represented the plaintiff in <u>Walter v. Wells Fargo & Company, et al</u>, Case No. 10-cv-07491

(S.D.N.Y. 2011), which represents one of the few cases brought under the NYCHRL's uniquely

liberal provision prohibiting employment discrimination against employees based on criminal

conviction status.  Lipman Decl. ¶ 26.

    Mr. Chase has special expertise regarding the emerging significance of the

NYCHRL Restoration Act.  As Courts were slowly recognizing that the NYCHRL Restoration

Act represented an important break with years of past precedent, in 2010 Mr. Chase published an

article in the <u>New York Law Journal</u> focusing on employers' enhanced duties under the

NYCHRL (focusing on the duty to accommodate employee disabilities) and calling attention to

the fact that federal courts had failed to recognize the NYCHRL even years after its enactment.

<u>See</u> "Duty to Accommodate Disability by Providing Leave of Absence," <u>New York Law Journal</u>,

August 18, 2010:

> Seemingly unaware of the Restoration Act, however, many federal
> courts have continued to hold that the NYCHRL operates
> identically to state and federal law, including the Americans with
> Disabilities Act of 1990.  Indeed, the courts' failure to
> acknowledge the Restoration Act even years after its adoption
> raises important questions – beyond the scope of this article –
> about the effectiveness of city legislation in this area and maybe
> others.

Lipman Decl. ¶ 27; Ex. D (collecting cases).

### iii.   <u>Mr. Hershberg is an experienced labor and employment attorney</u>

    Mr. Hershberg graduated from Rutgers University School of Law, Newark in

2010, after a successful career as a print journalist and communications professional.  From 2009

until 2013 he was a member of the labor and employment department at Proskauer Rose, LLP,

first as a paralegal and then, after his admission to the state bars of New York and New Jersey, as

an associate. He was then an associate in the labor and employment department of Vedder Price, P.C. He joined RLR in February 2014. Mr. Hershberg has represented clients in complex employment litigation at the state and federal levels involving claims of discrimination, harassment, and retaliation under federal, state, and local laws; whistleblower claims; claims of defamation, breach of contract, and intentional torts; and claims under the FLSA and state wage and hour laws. Mr. Hershberg is admitted to practice before the courts within the Southern and Eastern Districts of New York, as well as the District of New Jersey. Lipman Decl. ¶ 28.

In deciding whether RLR's rates are reasonable, the Court should pay special deference to the fact that the legal market – consisting of actual paying clients participating in a competitive market saturated with attorneys – has confirmed that RLR's rates are reasonable. Numerous clients are currently paying Mr. Lipman's, Mr. Chase's and Mr. Hershberg's hourly rates, presumptive proof that those rates are reasonable for attorneys of their level of experience and skill. See Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) ("[R]ates that plaintiff's counsel actually charge their clients [are] obviously strong evidence of what the market will bear"); Gusman v. Unisys Corp., 986 F.2d 1146, 1160 (7th Cir. 1993) ("[T]he best measure of the cost of an attorney's time is what the attorney could earn from paying clients").

RLR's rates, moreover, are consistent with other judicially approved rates. See Chin v. RCN Corp., No. 08 Civ. 7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) (finding that a "blended hourly rate" of "roughly $605" is "roughly in line with what is typically considered reasonable in this district"); Vikhu v. City of N.Y., No. 06 CV 2095, 2009 WL 1851019, *5 (E.D.N.Y. June 26, 2009) (noting evidence of three affidavits from law firms in the Southern District with extensive experience in civil rights law that associates' hourly rates range from $200 to $450 and partners' rates from $400 to $900), rev'd on other grounds, 372 Fed. Appx.

18

222 (2d Cir. 2010); Rozell, 576 F. Supp.2d 544-46 (S.D.N.Y. 2008) (noting that it is reasonable to award hourly rates of $600 for partners, $350 for senior associates, $250 for junior associates, $175 for law clerks and $125 for paralegals).

### 4.   RLR made a Significant Financial Commitment to this Case With No Guarantee of any Recovery

Finally, the Court should take into account the fact that RLR is a small, litigation-centered firm that committed significant financial resources to this case with no guarantee of recovering any of those fees and expenses absent a verdict in favor of Plaintiff. RLR literally "put its money where its mouth is" by advancing significant attorney time and related litigation costs of over $50,000 to prosecute this action and vindicate its client's civil rights. RLR, however, undertook this case confident that Ms. Marchuk would prevail, and relied on the fact that it would be legally entitled to recover its reasonable fees and expenses if and when the jury returned a verdict in her favor. Lipman Decl. ¶ 29. The Court should now award those fees and expenses.

## CONCLUSION

Based on the forgoing, Plaintiff respectfully requests that the Court award her

$1,379,795.58 in attorneys' fees and $51,011.58 in costs.

Dated: New York, New York
February 20, 2015

ROTTENBERG LIPMAN RICH, P.C.

By:_____
Harry W. Lipman
Thomas E. Chase
Jonathan S. Hershberg
369 Lexington Avenue, 16th Floor
New York, New York 10017
(212) 661-3080
hlipman@rlrpclaw.com
tchase@rlrpclaw.com
jhershberg@rlrpclaw.com

Attorneys for Plaintiff