**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALEXANDRA MARCHUK,

                         Plaintiff,

         v.

FARUQI & FARUQI, LLP, JUAN E.
MONTEVERDE, NADEEM FARUQI,
and LUBNA FARUQI,

                         Defendants.

Civil Action No. 13-CV-1669 (AKH)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.  FEDERAL CASE LAW PROVIDES USEFUL GUIDANCE IN
    INTERPRETING THE FEE PROVISION OF THE NYCHRL ........................................ 3

II. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY OR
    REDUCE PLAINTIFF'S ATTORNEYS' FEES BECAUSE OF HER
    RELATIVE LACK OF SUCCESS .................................................................................. 4

III. PLAINTIFF CANNOT RECOVER COSTS AND ATTORNEYS' FEES
     INCURRED AFTER DECEMBER 11, 2014, BECAUSE SHE
     REJECTED A RULE 68 OFFER THAT WOULD HAVE BEEN MORE
     FAVORABLE TO HER ................................................................................................. 6

    A.  The Rule 68 Offer Was More Favorable To Plaintiff Than Her
        Eventual Verdict ..................................................................................................... 6

    B.  Plaintiff Cannot Recover Costs And Attorneys' Fees Incurred
        After December 11, 2014, Because The Rule 68 Offer Was More
        Favorable Than Her Eventual Jury Verdict ............................................................ 6

        1.  The Text Of The Rule 68 Offer Defines Costs To Include
            Attorneys' Fees ............................................................................................... 7

        2.  The NYCHRL Defines Costs To Include Attorneys' Fees ................................ 8

        3.  Interpreting The NYCHRL As Not Being Subject To Rule
            68's Attorneys' Fees Cut-off Rule Would Render An
            Absurd Result ................................................................................................. 9

IV. PLAINTIFF SHOULD NOT RECOVER ATTORNEYS' FEES
    INCURRED FOR DRAFTING COMPLAINTS THAT VIOLATED
    RULE 8 ...................................................................................................................... 10

V.  PLAINTIFF CANNOT RECOVER ATTORNEYS' FEES INCURRED
    FOR WORK ON HER UNSUCCESSFUL CLAIMS ..................................................... 12

VI. THE COURT SHOULD APPLY AN ACROSS-THE-BOARD
    REDUCTION ON PLAINTIFF'S ATTORNEYS' FEES BECAUSE
    ROTTENBERG LIPMAN RICH BLOCK BILLED THEIR TIME ................................ 16

VII.   THE COURT SHOULD EXERCISE ITS DISCRETION TO REDUCE
        THE ATTORNEYS' FEES INCURRED UNREASONABLY ...................................... 17

        A.      Time Spent Digesting Transcripts ........................................................... 17

        B.      Two Partners Present At Depositions ................................................... 18

        C.      Rottenberg Lipman Rich Intra-Firm Conferences ................................ 18

        D.      Post-Summation Hours ....................................................................... 19

CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.R. v. New York City Dep't of Educ.*,
   2014 WL 5462465 (S.D.N.Y. Oct. 28, 2014)......................................................................... 16

*Abel v. Town Sports Int'l., LLC*,
   2012 WL 6720919 (S.D.N.Y. Dec. 18, 2012) .................................................................... 4, 14

*Albunio v. City of New York*,
   23 N.Y.3d 65 (2014)............................................................................................................ 3, 8

*Barfield v. New York City Health and Hospitals Corp.*,
   537 F.3d 132 (2d Cir. 2008) ................................................................................................ 2, 4

*Boisson v. Banian Ltd.*,
   221 F.R.D. 378 (E.D.N.Y. 2004)............................................................................................. 6

*Brady v. Calyon Secs.*,
   2007 WL 4440926 (S.D.N.Y. Dec. 17, 2007) ...................................................................... 16

*Castillo v. Time Warner Cable of New York*,
   2013 WL 1759558 (S.D.N.Y. Apr. 24, 2013) ................................................................. passim

*Creighton v. Dominican College*,
   2011 WL 4914724 (S.D.N.Y. Aug. 16, 2011)........................................................... 12, 13, 16

*Degregorio v. Richmond Italian Pavillion, Inc.*,
   90 A.D.3d 807 (2d Dep't 2011).......................................................................................... 2, 3, 4

*Dotson v. City of Syracuse*,
   2011 WL 817499 (N.D.N.Y. Mar. 2, 2011) ......................................................................... 18

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ........................................................................................................... 2, 3, 4

*Goodheart Clothing Co. v. Laura Goodman Enters.*,
   962 F.2d 268 (2d Cir. 1992) .................................................................................................... 7

*Guerreo v. Cummings*,
   70 F.3d 1111 (9th Cir. 1995) ................................................................................................... 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................................... 2, 12

*Kronfeld v. Transworld Airlines, Inc.*,
   129 F.R.D. 598 (S.D.N.Y. 1990).......................................................................................... 18

*L.V. v. Dep't of Educ.*,
  700 F. Supp. 2d 510 (S.D.N.Y. 2010) ................................................................ 16

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) .............................................................................. 12

*Marek v. Chesny*,
  473 U.S. 1 (1985) ............................................................................................ 7, 8

*McGrath v. Toys "R" Us, Inc.*,
  3 N.Y.3d 421 (2004) ........................................................................................... 3

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
  176 Misc.2d 325 (N.Y. Sup. Ct. 1997) ......................................................... 2, 10

*McPherson v. New York City Dep't of Educ.*,
  457 F.3d 211 (2d Cir. 2006) .............................................................................. 16

*Millea v. Metro-North R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011) ................................................................................ 2

*New York State Ass'n of Retarded Children, Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983) ............................................................................ 17

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ............................................................................................. 2

*Pino v. Locascio*,
  101 F.3d 235 (2d Cir. 1996) ................................................................................ 3

*Riverside v. Rivera*,
  477 U.S. 561 (1986) ............................................................................................. 2

*Robinson v. Instructional Sys., Inc.*,
  80 F. Supp. 2d 203 (S.D.N.Y. 2000) ................................................................. 12

*Rozell v. Ross-Holst*,
  576 F. Supp. 2d 527 (S.D.N.Y. 2008) ............................................................ 9, 18

*Sass v. MTA Bus Co.*,
  6 F. Supp. 3d 238 (E.D.N.Y. 2014) ..................................................................... 3

*Shannon v. Fireman's Fund Ins. Co.*,
  156 F. Supp. 2d 279 (S.D.N.Y. 2001) ........................................................... 2, 10

*Short v. Manhattan Apartments, Inc.*,
  2013 WL 2477266 (S.D.N.Y. June 10, 2013) ...................................................... 8

iv

*Shukla v. Sharma*,
   2010 WL 8435857 (E.D.N.Y. Dec. 15, 2010) .................................................................. 17

*Simmonds v. New York City Dep't of Corrections*,
   2008 WL 43034746 (S.D.N.Y. 2008) .......................................................................... 18

*Stanczyk v. City of New York*,
   752 F.3d 273 (2d Cir. 2014) ................................................................................. 6, 7

*Townsend v. Benjamin Enters., Inc.*,
   679 F.3d 41 (2d Cir. 2012) ..................................................................................... 7

*United States v. Dauray*,
   215 F.3d 257 (2d Cir. 2000) ................................................................................... 10

*Walker v. Coughlin*,
   909 F. Supp. 872 (W.D.N.Y. 1995) .......................................................................... 18

*Wilson v. Nomura Securities, Inc.*,
   361 F.3d 86 (2d Cir. 2004) ............................................................................. 7, 9, 10

*Wise v. Kelly*,
   620 F. Supp. 2d 435 (S.D.N.Y. 2008) ....................................................................... 16

**Statutes**
42 U.S.C. § 2000e-5(k) ............................................................................................ 8

N.Y.C. Admin. Code § 8-502(f) ......................................................................... 1, 4, 8

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ............................................ 1

**Rules**
Fed. R. Civ. P. 68 .............................................................................................. 6, 7

Defendants Faruqi & Faruqi, LLP, Nadeem Faruqi, Lubna Faruqi, and Juan Monteverde (collectively, "Defendants") submit this memorandum of law in opposition to Plaintiff's motion for an award of attorneys' fees and costs.  *See* Dkt. No. 174.

## INTRODUCTION

On March 13, 2013, Plaintiff, by and through her attorneys Rottenberg Lipman Rich, P.C. ("Rottenberg Lipman Rich"), began a nearly two-year media circus by filing a complaint this Court described as "salacious" and "unprofessional."  After two amendments, Plaintiff sought $22 million in damages.  Defendants ultimately prevailed on five of six claims. Defendants Nadeem and Lubna Faruqi were completely exonerated.  *See* 2/2/15 Order on JMOL Reconsideration, Dkt. No. 169, at 2 ("I held that they are not liable because they did not do anything wrong.") (footnote omitted).  The jury found for Plaintiff only on her claim under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.* (the "NYCHRL"), "which requires a quasi-angelic work place where work is done in peace and harmony," *Castillo v. Time Warner Cable of New York*, 2013 WL 1759558, at *4 (S.D.N.Y. Apr. 24, 2013) (Crotty, J.), and awarded her only $140,000, approximately 0.6% of what she sought.  This was less than one-third of the amount of Defendants' December 11, 2014 Rule 68 Offer of Judgment in the amount of $425,001, plus costs and reasonable attorneys' fees, which Plaintiff had rejected.

Claiming to be the "prevailing party," Plaintiff's counsel now asks this Court to exercise its discretion and award them attorneys' fees in the amount of $1,379,795.58, nearly ten times the jury's award.   Such a fee award would be grossly unreasonable.  The Court should exercise its discretion under the NYCHRL to deny, or substantially reduce, Plaintiff's requested attorneys' fees.  *See* N.Y.C. Admin. Code. § 8-502(f) ("In any civil action commenced pursuant to this section, the court, **in its discretion**, may award the prevailing party costs and reasonable attorney's fees.") (emphasis added).

## LEGAL STANDARD

Under the NYCHRL "[b]oth the evaluation of reasonable attorneys' fees and the 'cutting of fees claimed [to be] proper' lie within the sound discretion of the court." *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001) (Scheindlin, J.) (quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc.2d 325, 328 (N.Y. Sup. Ct. 1997); *see also Degregorio v. Richmond Italian Pavillion, Inc.*, 90 A.D.3d 807, 809 (2d Dep't 2011) ("A court is vested with 'discretion' in determining the appropriate amount of fees."). "While a district court must calculate the lodestar, it is not 'conclusive in all circumstances.' A district court may adjust the lodestar when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)). "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "When evaluating the 'degree of success' obtained by plaintiffs, the court should examine the 'quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint.'" *Castillo*, 2013 WL 1759558, at *4 (quoting *Barfield*, 537 F.3d at 152). If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "'Where recovery of private damages is the purpose of … civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Farrar*, 506 U.S. at 114 (quoting *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)).

## ARGUMENT

### I.     FEDERAL CASE LAW PROVIDES USEFUL GUIDANCE IN INTERPRETING THE FEE PROVISION OF THE NYCHRL

Plaintiff asserts that federal doctrines concerning attorneys' fees are inapplicable, and "parties that prevail on their claims are entitled to recover their reasonable attorneys' fees regardless of doctrines developed under federal law that may permit fees to be reduced based on the assessment of the parties' relative success or consideration of the specific financial recovery obtained."  Memorandum Of Law In Support of Plaintiff's Motion For An Award Of Attorneys' Fees And Costs ("Plf.'s Br.") at 8.  That is wrong.  In *Albunio v. City of New York*, the New York Court of Appeals addressed a question concerning "the policy considerations underlying the award of counsel fees to prevailing civil rights plaintiffs under the NYCHRL."  23 N.Y.3d 65, 73 (2014) (Lippman, C.J.).  In answering the question, the Court looked to federal case law, reasoning it "can provide useful guidance in this respect since 'the attorney fee provision of the NYCHRL is similar to the fee provisions in the federal civil rights statutes.'"  *Id.* (quoting *McGrath v. Toys "R" Us, Inc.*, 3 N.Y.3d 421, 426 (2004)).  Likewise, in *Degregorio v. Richmond Italian Pavillion, Inc.*, the Appellate Division, Second Department affirmed the trial court's denial of an award of attorneys' fees under the NYCHRL where the plaintiff's victory was *de minimis*.  90 A.D.3d 807, 809 (2d Dep't 2011).  In affirming the trial court's ruling, the Second Department stressed that a trial "court is vested with 'discretion' in determining the appropriate fee" under the NYCHRL.  *Id.*  Further, the Second Department cited and relied on *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992) and *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996) as support for its holding.  *See Degregorio*, 90 A.D.3d at 809.  As these two decisions make clear, New York courts continue to rely on federal doctrines in addressing attorneys' fees under the NYCHRL.  *See, e.g.*, *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 260 (E.D.N.Y. 2014)

3

("[T]he New York Court of Appeals … has drawn from federal law in addressing issues raised under the NYCHRL's attorneys' fee provision, even subsequent to the amendment of the NYCHRL by the 2005 Restoration Act.").

Moreover, other federal courts considering Plaintiff's argument have found it unavailing. For example, Magistrate Judge Freeman held "the remedial purposes of the City law would not be served by completely ignoring a litigant's degree of success in making a fee award.  Such an approach could create skewed incentives for attorneys to waste resources by adding weak claims, with little chance of success, to otherwise strong cases." *Abel v. Town Sports Int'l., LLC*, 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 18, 2012).  Further, Judge Crotty recently relied on federal doctrine in cutting an attorneys' fee award under the NYCHRL by 85% where the plaintiff only prevailed on one of nine claims.  *Castillo*, 2013 WL 1759558, at *5.  Judge Crotty noted the 85% reduction took "into account the overwhelming lack of success and the *de minimis* award."  *Id.*

## II.     THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY OR REDUCE PLAINTIFF'S ATTORNEYS' FEES BECAUSE OF HER RELATIVE LACK OF SUCCESS

The NYCHRL attorneys' fee provision provides:  "In any civil action commenced pursuant to this section, the court, *in its discretion*, may award the prevailing party costs and reasonable attorney's fees."  N.Y.C. Admin. Code § 8-502(f) (emphasis added).  In exercising its discretion, a court may deny an award of attorneys' fees, *see, e.g.*, *Degregorio*, 90 A.D.3d at 809, or reduce an award of attorneys' fees.  *See, e.g.*, *Castillo*, 2013 WL 1759558, at *5.  "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."  *Barfield*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar*, 506 U.S. at 114).  Here, Plaintiff's operative complaint included six causes of action against four different defendants, and sought a total of $22 million in damages.  SAC ¶¶ 124-158.  Ultimately, Plaintiff only prevailed on one of her six claims (hostile work

4

environment under the NYCHRL), only prevailed against two of four defendants, and only recovered $140,000, approximately 0.6% of what she sought.[1]

In *Castillo*, Judge Crotty addressed a fee application on similar facts.  There, the plaintiff brought nine causes of action "alleging race and national origin discrimination, retaliation and a hostile work environment" under Title VII, the NYSHRL, and the NYCHRL.  *Castillo*, 2013 WL 1759558, at *1.  "Castillo prevailed only on his NYCHRL hostile work environment claim, which requires a quasi-angelic work place where work is done in peace and harmony," and was awarded only $5,000.  *Id.*  Because "Castillo's degree of success was quite minimal compared to the relief sought," Judge Crotty reduced the plaintiff's attorneys' fees by 85%.  *Id.* at *5.

This Court should not allow Plaintiff's counsel to collect an attorneys' fee award nearly ten times the amount of the verdict, particularly where the Plaintiff had rejected a far more favorable Rule 68 offer in advance of the trial.  The Plaintiff's rejection of that offer was part of a litigation strategy designed to inflict damage on the Defendants through the adverse publicity that a trial would generate.  This was a strategy Plaintiff and her counsel pursued throughout this case, starting with the salacious and unprofessional complaint, which was promptly disseminated to the press after filing.  The conduct of the Plaintiff and her counsel was shameful.  Given the unique circumstances of this case, it would be well within the Court's discretion to deny any fee award.  In the alternative, the Court should substantially reduce to amount of fees to reflect the Plaintiff's lack of success at trial.

---

[1] Recognizing her shortcomings at trial, Rottenberg Lipman Rich now argues that Plaintiff "prevailed" because the "lawsuit spurred F&F to implement formal, firm-wide training with regard to appropriate workplace conduct."  Plf.'s Br. at 10.  As is clear from her $22 million demand, Plaintiff's goal was not to effectuate intra-firm policy change, but rather to secure a large payout for herself.

5

### III. PLAINTIFF CANNOT RECOVER COSTS AND ATTORNEYS' FEES INCURRED AFTER DECEMBER 11, 2014, BECAUSE SHE REJECTED A RULE 68 OFFER THAT WOULD HAVE BEEN MORE FAVORABLE TO HER

#### A. The Rule 68 Offer Was More Favorable To Plaintiff Than Her Eventual Verdict

On December 11, 2014, Defendants served Plaintiff, through her counsel, with a Rule 68 Offer of Judgment (the "Rule 68 Offer"). The Rule 68 Offer provided that Defendants would "allow judgment in the amount of $425,001, plus costs accrued to date (including reasonable attorneys' fees) in an amount to be later determined by the Court." Declaration of Scott A. Bursor In Support Of Defendants' Opposition To Plaintiff's Motion For Attorneys' Fees And Costs ("Bursor Decl.") ¶ 2, Ex. A. Plaintiff did not accept Defendants' Rule 68 Offer, and ultimately received a less favorable jury verdict for $140,000. *See* Dkt. No. 171. The Rule 68 Offer, therefore, was more favorable than Plaintiff's eventual jury verdict. *See, e.g.*, *Boisson v. Banian Ltd.*, 221 F.R.D. 378, 382 (E.D.N.Y. 2004) ("Defendant made a Rule 68 offer of judgment in the amount of $12,000. After trial, appeal and this court's opinion on damages, Plaintiff was ultimately awarded $4,806. This award was less favorable than Defendant's Rule 68 offer of judgment.").

#### B. Plaintiff Cannot Recover Costs And Attorneys' Fees Incurred After December 11, 2014, Because The Rule 68 Offer Was More Favorable Than Her Eventual Jury Verdict

Federal Rule of Civil Procedure 68 "is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation." *Stanczyk v. City of New York*, 752 F.3d 273, 280 (2d Cir. 2014). The Rule states, in relevant part, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the *costs then accrued*." Fed. R. Civ. P. 68(a) (emphasis added). "As used in Rule 68, the term 'costs' refers to all costs awardable under the statute or authority that is the basis for the underlying

6

claim.  Where the underlying statute defines 'costs' to include attorney's fees, therefore, such fees are 'costs' for the purposes of Rule 68." *Wilson v. Nomura Securities, Inc.*, 361 F.3d 86, 89 (2d Cir. 2004) (citing *Marek v. Chesny*, 473 U.S. 1, 9 (1985)).  The Second Circuit has therefore held that, in the context of employment discrimination cases, "a prevailing party may not recover from the defendant attorney's fees and costs accrued after an Offer of Judgment is served if the Offer exceeds the sum of the plaintiff's ultimate recovery plus the amount of fees and costs accrued by the plaintiff as of the time of the Offer." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 58 (2d Cir. 2012); *see also Stanczyk*, 752 F.3d at 280 ("In light of Rule 68, it is undisputed that the district court properly limited Stanczyk's costs and attorney's fees to those incurred prior to December 11, 2011.").

Here, both the text of the Rule 68 Offer, and the underlying statute define costs to include attorneys' fees.  According to Rottenberg Lipman Rich's time records, it incurred post-Rule 68 Offer costs of $22,425.19 and post-Rule 68 Offer attorneys' fees of $520,177.50, for a combined total of $542,602.69.  *See* Bursor Decl. ¶ 3, Ex. B.  The Court must therefore subtract that amount from any award of attorneys' fee.

       1.     *The Text Of The Rule 68 Offer Defines Costs To Include Attorneys' Fees*

"Offers of judgment pursuant to Fed. R. Civ. P. 68 are construed according to ordinary contract principles.  …  If a writing, or the term in question, appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument." *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 272 (2d Cir. 1992) (citations omitted).  Here, the Rule 68 Offer unambiguously defined costs to include attorneys' fees.  The Rule 68 Offer stated:

> "Pursuant to Fed. R. Civ. P. 68, defendants Faruqi & Faruqi, LLP, Juan Monteverde, Nadeem Faruqi and Lubna Faruqi ("Defendants"), hereby offer to allow judgment in the amount of

> $425,001, plus *costs* accrued to date (*including reasonable
> attorneys' fees*) in an amount to be determined by the Court. …
> The offer of judgment is intended to resolve all of Plaintiff's
> claims in this action."

Bursor Decl. Ex. A (emphasis added).  The Rule 68 Offer therefore defines costs to include

attorneys' fees and that definition is controlling.  *See Guerreo v. Cummings*, 70 F.3d 1111, 1114

(9th Cir. 1995) ("[T]he terms of the offer – not the terms of Rule 68 – control the cut-off of

attorney's fees and costs.") (citing *Marek*, 473 U.S. at 6).  Accordingly, because the terms of the

Rule 68 Offer were more favorable than her eventual jury verdict, Plaintiff may not recover her

post-Rule 68 Offer fees and costs, totaling $542,602.69.  *See* Bursor Decl. ¶ 3, Ex. B.

> 2.    *The NYCHRL Defines Costs To Include Attorneys' Fees*

Title VII and the NYCHRL contain "similar … fee provisions."  *Albunio v. City of New

York*, 23 N.Y.3d 65, 73 (2014).[2]  Both fee provisions define costs to include attorney's fees, and

therefore Defendants' Rule 68 Offer prohibits Plaintiff from recovering her post-Rule 68 Offer

attorneys' fees.

For example, in *Short v. Manhattan Apartments, Inc.*, Judge Conti addressed a fee

application made pursuant to the NYCHRL where a Rule 68 Offer had been made and rejected.

2013 WL 2477266, at *1, 5-6 (S.D.N.Y. June 10, 2013).  In addressing the issue, Judge Conti

made clear that Rule 68, even in the context of the NYCHRL, "not only entitles a defendant to

costs in certain circumstances but also cuts off plaintiff's right to recover attorney's fees and

costs incurred after the date of the offer."  *Id.* at *5 (citing *Marek v. Chesny*, 473 U.S. 1, 9

(1985)).  While Judge Conti concluded that the Rule 68 offer was not more favorable than the

---

[2] Title VII states, in relevant part, "the court, in its discretion, may allow the prevailing party … a
reasonable attorney's fee (including expert fees) as a part of the costs."  42 U.S.C. § 2000e-5(k).
The NYCHRL states, in relevant part, "the court, in its discretion, may award the prevailing
party costs and reasonable attorney's fees."  N.Y.C. Admin. Code § 8-502(f).

ultimate jury verdict, his analysis made clear that the Rule 68 offer would have limited the plaintiff's attorneys' fees to those incurred before the offer if it had been more favorable.

Likewise, in *Rozell v. Ross-Holst*, Magistrate Judge Francis addressed a fee application made pursuant to the NYCHRL. 576 F. Supp. 2d 527, 536 (S.D.N.Y. 2008). In discussing the role of settlement negotiations in determining attorneys' fee, Magistrate Judge Francis noted "[w]here, as here, a fee-shifting statute is involved, the award of attorneys' fees would likewise be limited to those incurred prior to the plaintiff's rejection of the Rule 68 offer." *Id.* at 542. While the Rule 68 offer in *Rozell* was not more favorable than the ultimate jury verdict, Magistrate Judge Francis' analysis made clear that the Rule 68 offer would have limited the plaintiff's attorneys' fees to those incurred before the offer had it been more favorable. Accordingly, Plaintiff may not recover her post-Rule 68 Offer fees and costs because the NYCHRL defines costs to include attorneys' fees.

> 3.   *Interpreting The NYCHRL As Not Being Subject To Rule 68's Attorneys' Fees Cut-off Rule Would Render An Absurd Result*

In *Nomura Securities*, the Second Circuit was tasked with deciding whether a plaintiff, by accepting a Rule 68 offer of judgment that encompassed his Title VII and NYCHRL claims, as well as "all costs available under all local, state or federal statutes," had forfeited his right to attorneys' fees under the NYCHRL. *See Nomura Securities*, 361 F.3d at 88. The Court ruled that he had. *Id.* at 91. The Court explained that the plaintiff's Title VII and NYCHRL claims involved "a common core of facts" and were "based on related legal theories." *Id.* at 90. In that situation, when a plaintiff fails to prove one of two overlapping claims he may nonetheless recover attorneys' fees for both. *Id.* at 91. Similarly, when a plaintiff prevails on both claims he is only entitled to one fee award. *Id.* Thus, because plaintiff had "prevailed" on both his Title

VII claim and his NYCHRL claim, he was only entitled to one fee, and he had been granted that fee by the terms of the Rule 68 offer of judgment.

Here, Plaintiff only prevailed on her NYCHRL claim.  Had she prevailed on her Title VII claim as well, her fee award would fall under the parameters outlined in *Nomura Securities* and she would only be able to collect her costs and fees incurred prior to December 11, 2014. Interpreting the NYCHRL fee provision as not being subject to Rule 68's attorneys' fee cut-off rule, therefore, would render an absurd result:  Plaintiff would be *rewarded* for failing under Title VII.   It is well-established that "[a] statute should be interpreted in a way that avoids absurd results."  *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000).  The Court, therefore, should not interpret the NYCHRL fee provision in a way that rewards Plaintiff for failing on her Title VII claim.[3]

For the foregoing reasons, Plaintiff may not recover her post-Rule 68 Offer attorneys' fees and costs.  These fees and costs totaled $542,602.69.  *See* Bursor Decl. ¶ 3, Ex. B.  The Court must therefore subtract that amount from any award of attorneys' fee.

## IV.      PLAINTIFF SHOULD NOT RECOVER ATTORNEYS' FEES INCURRED FOR DRAFTING COMPLAINTS THAT VIOLATED RULE 8

Under the NYCHRL "[b]oth the evaluation of reasonable attorneys' fees and the 'cutting of fees claimed [to be] proper' lie within the sound discretion of the court."  *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001) (Scheindlin, J.) (quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc.2d 325, 328 (N.Y. Sup. Ct. 1997)).  At trial, the Court repeatedly remarked that Rottenberg Lipman Rich filed an unprofessional complaint.  For example, the Court stated:

---

[3] While Defendants believe Plaintiff is not able to collect post-Rule 68 Offer attorneys' fees, the remainder of their memorandum will address some billing entries made after their Rule 68 Offer was rejected to account for the unlikely event that the Court interprets Rule 68 differently.

> "Having read the pleadings, I have come away appalled at the lack
> of professionalism.  Allegations are made as if a brief is being
> written.  Language is vituperative.  Overblown.  Rule 8 in the
> Federal Rules of Civil Procedure have not been followed.  There is
> no justification for such a complaint.  Had it been drawn to my
> attention, I surely would have granted a motion."

Trial Tr. at 518:23-519:4.

The Court also remarked:

> "On March 12, 2013, Plaintiff filed a 22-page complaint
> containing every salacious detail elicited during the trial and many
> more that weren't.  It was as replete with incendiary language and
> vituperative attacks as any complaint I have seen.  Had Defendants
> moved to strike the complaint earlier, I would have certainly done
> so.  Plaintiff is represented by experienced counsel who know well
> what a pleading should contain, and the decision to file this
> unprofessional document thus reflects an intent to extend the
> litigation from the courts to the press.  If the character of pleadings
> can remove a Title VII lawsuits' 'protected activity' status, then
> this pleading did so."

1/28/15 Order on JMOL, Dkt. No. 149, at 8-9.

Plaintiff now seeks to recover Rottenberg Lipman Rich's full lodestar for time spent

drafting the complaint, and the subsequent first and second amended complaints.[4]  Defendants

have created a spreadsheet from Rottenberg Lipman Rich's billing records that compiles their

time spent drafting the complaints.  *See* Bursor Decl. ¶ 4, Ex. C.  This spreadsheet shows that

Rottenberg Lipman Rich devoted 185.21 hours to drafting the complaints, for a total fee of

$87,582.  *Id.*  Due to the unprofessionalism of the complaints, the Court should deny Plaintiff

attorneys' fees incurred for drafting them.

---

[4] The amended complaints did not correct the original complaint's unprofessionalism.  Rather,
they contained the same salacious factual detail as the original, and expanded on that with more
salacious detail to support Plaintiff's added claims of retaliation, defamation, and malicious
prosecution.  *See* Dkt. Nos. 9, 17.

11

**V.      PLAINTIFF CANNOT RECOVER ATTORNEYS' FEES INCURRED FOR WORK ON HER UNSUCCESSFUL CLAIMS**

Plaintiff argues the Court should not reduce her attorneys' fees for work done on her unsuccessful claims because "[t]he claims upon which Plaintiff failed to recover were inextricably linked to … either her successful claims or the defenses she asserted in response to Defendants' frivolous counterclaims."  Plf.'s Br. at 14.  "When a plaintiff has … prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998).  "Fees should not be awarded for unrelated claims based on 'different facts and legal theories.'"  *Castillo*, 2013 WL 1759558, at *4 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).  Here, Plaintiff's unsuccessful claims were all either based on different facts or different legal theories, therefore meaning she cannot recover attorneys' fees for work done prosecuting them.

<u>First</u>, Plaintiff's claims for retaliation, defamation, and malicious prosecution "involved a core of facts and legal theories that are completely separate from those related to the successful claims."  *Robinson v. Instructional Sys., Inc.*, 80 F. Supp. 2d 203, 210 (S.D.N.Y. 2000).  In a similar situation, Judge Zilly imposed a fee reduction where the plaintiff prevailed only on a retaliation claim, and was unsuccessful on claims of racial discrimination and hostile work environment.  *See Creighton v. Dominican College*, 2011 WL 4914724, at *8 (S.D.N.Y. Aug. 16, 2011).  In finding the claims were not inextricably intertwined, Judge Zilly noted "plaintiff was not required to prove he was subjected to discrimination or a hostile work environment to prevail on his retaliation claim; he only needed to show he complained about his perceptions of improper treatment."  *Id.* at *8 n.16.  Likewise, Plaintiff did not need to prove she was subjected to retaliation, defamation, or malicious prosecution in order to prosecute her NYCHRL claim.

12

Moreover, Plaintiff's argument that her claims for retaliation, defamation, and malicious prosecution were "defenses she asserted in response to Defendants' frivolous counterclaims," is unavailing. Plf.'s Br. at 14. Defendants' withdrew their counterclaims on September 30, 2013. *See* Dkt. No. 34. Yet, Plaintiff continued to pursue her claims for retaliation, defamation, and malicious prosecution. Plaintiff's malicious prosecution claim was dismissed on summary judgment on January 28, 2014, *see* Dkt. No. 60, and her retaliation and defamation claims were dismissed on judgment as a matter of law during the trial. *See* 1/28/15 Order on JMOL, Dkt. No. 149. If Plaintiff's claims for retaliation, defamation, and malicious prosecution were truly defenses to Defendants' counterclaims, Plaintiff would have withdrawn them when Defendants' withdrew their counterclaims. Instead, they pursued the claims throughout the entire litigation.

For the foregoing reasons, Plaintiff may not collect their attorneys' fees for work done prosecuting her retaliation, defamation, and malicious prosecution claim. The first and second amended complaints added nothing to Plaintiff's NYCHRL hostile work environment claim, or the facts surrounding it. Rather, they added allegations supporting, and claims for, retaliation, defamation, and malicious prosecution. Defendants have created a spreadsheet from Rottenberg Lipman Rich's billing records that compiles their time spent drafting the first and second amended complaints. *See* Bursor Decl. ¶ 5, Ex. D. This spreadsheet shows that Rottenberg Lipman Rich devoted 86.41 hours to drafting the amended complaints, for a total fee of $40,547. *Id.* The Court should therefore subtract that amount from any fee award. Additionally, "[b]ecause the billing records of plaintiff's counsel do not [otherwise] detail how much time was devoted to each claim," the Court should reduce Plaintiff's attorneys' fees by a fixed percentage "to reflect plaintiff's limited success." *Creighton*, 2011 WL 4914724, at *8. Defendants suggest the Court follow Judge Crotty and apply an 85% reduction.

13

<u>Second</u>, Plaintiff's claims for hostile work environment under Title VII and the NYSHRL were not inextricably intertwined with her hostile work environment claim under the NYCHRL. As the Court noted, "a hostile work environment claim under city law only requires a plaintiff to show that she was treated less well because of her gender; she does not need to show that the unwelcome conduct was 'severe' or 'pervasive.'"  1/28/15 Order on JMOL, Dkt. No. 149, at 4. Therefore, Plaintiff did not need to pursue claims under Title VII and the NYSHRL in order to prevail on the NYCHRL.

Other courts in this District have taken a similar approach.  For example, in *Castillo*, Judge Crotty held that the plaintiff's attorneys could not "recover for hours prosecuting Castillo's unsuccessful claims [including claims under Title VII and the NYSHRL] because they were not 'inextricably intertwined' with his successful NYCHRL harassment claim." *Castillo*, 2013 WL 1759558, at *4.  Judge Crotty noted the claims were not inextricably intertwined, because "[w]ith respect to hostile work environment, the jury found that it was not so severe or pervasive as to interfere with Castillo's ability to perform his job functions.  Rather under the very lenient standards of the NYCHRL, the jury found that TWCNYC failed to establish that the harassment was only petty or slight and awarded damages in a *de minimis* award." *Id.*  Judge Crotty ultimately imposed an 85% reduction in plaintiff's attorneys' fees.  *See id.* at *5.

Furthermore, allowing Plaintiff's attorneys' to recover their fees for work done on her unsuccessful Title VII and NYSHRL claims would create the exact "skewed incentives for attorneys to waste resources by adding weak claims, with little chance of success, to otherwise strong cases," that other Courts have warned against.  *Abel*, 2012 WL 6720919, at *34.  This Court recognized that maintaining claims under Title VII and the NYSHRL created unnecessary complication and confusion:

14

THE COURT:  I will tell you another thing.  There are nuances of difference between the city law and the federal law; less so between the state law and the federal law.  This is a federal court.  The primary jurisdiction is federal, even though there is diversity of citizenship.  I have to worry, in charging the jury, that instructions with regard to the federal law, if surrounded by differing instructions as to state and city law, can cause confusion to the jury, and if so, what to do about it.

I make this observation because insofar as there are these differences in words with regard to the city law, it may be inappropriate to charge them unless there is clear meaning, clear indication of a different meaning.

…

MR. LIPMAN:  I think in the preamble to the city law there is a clear indication of an intention that the City Human Rights Law be broadly and liberally interpreted to achieve its ends.  And if plaintiff were to have to choose between or among three different instructions on three different laws at issue here, she would clearly choose the city law.

THE COURT:  Why don't you just withdraw your federal claims?

MR. LIPMAN:  We may do that, your Honor.  Based upon the colloquy here, we may do that, but we would like to reserve.

Trial Tr. at 1361:9-1362:10.  Simply put, the NYCHRL provided Plaintiff with the same remedies and benefits as Title VII and the NYSHRL, while simultaneously containing a more plaintiff-friendly legal standard.  Her Title VII and NYSHRL claims provided nothing other than complication and confusion.  The Court should not reward Rottenberg Lipman Rich for unnecessarily complicating the case.

For the foregoing reasons, Rottenberg Lipman Rich should not recover their attorneys' fees for work done on Plaintiff's claims for hostile work environment under Title VII and the NYSHRL.  Rottenberg Lipman Rich's work on obtaining a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") was exclusively for her Title VII claim.  *See,*

15

*e.g.*, *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) ("Under

Title VII … a plaintiff can sue in federal court only after filing timely charges with the EEOC.

… A private Title VII plaintiff must also first receive a 'right-to-sue' letter from the EEOC.").

An EEOC right-to-sue letter is not needed to pursue a NYCHRL hostile work environment claim

in federal court. *See Brady v. Calyon Secs.*, 2007 WL 4440926, at *13 (S.D.N.Y. Dec. 17, 2007)

(considering NYCHRL claim where plaintiff "did not file an EEOC charge or receive a right to

sue letter"). Thus, Rottenberg Lipman Rich's work in obtaining an EEOC right-to-sue letter was

of no use. Rottenberg Lipman Rich's billing records indicate this work amounted to 8.15 hours,

for a total fee of $4,075. *See* Bursor Decl. ¶ 6, Ex. E. Additionally, "[b]ecause the billing

records of plaintiff's counsel do not [otherwise] detail how much time was devoted to each

claim," the Court should reduce Plaintiff's attorneys' fees by a fixed percentage "to reflect

plaintiff's limited success." *Creighton*, 2011 WL 4914724, at *8. Defendants suggest the Court

follow Judge Crotty's and apply an 85% reduction.

## VI.   THE COURT SHOULD APPLY AN ACROSS-THE-BOARD REDUCTION ON PLAINTIFF'S ATTORNEYS' FEES BECAUSE ROTTENBERG LIPMAN RICH BLOCK BILLED THEIR TIME

"Block billing is the practice of 'aggregating multiple tasks into one billing entry' which

makes it 'exceedingly difficult for courts to assess the reasonableness of the hours billed.'" *A.R.*

*v. New York City Dep't of Educ.*, 2014 WL 5462465, at *10 (S.D.N.Y. Oct. 28, 2014) (quoting

*Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008)). "When block billing is identified,

'courts have found it appropriate to cut hours across the board by some percentage.'" *A.R.*, 2014

WL 5462465, at *10 (quoting *L.V. v. Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010)).

Here, Rottenberg Lipman Rich's submitted billing records evidence numerous examples of block

billing. Defendants have created a spreadsheet from Plaintiff's billing records which compiles

those entries that were block billed. *See* Bursor Decl. ¶ 7, Ex. F. This spreadsheet shows that

Rottenberg Lipman Rich block billed 1,842.27 hours, for a total fee of $748,665.50.  In their

motion for attorneys' fees, Defendants suggested a 50% reduction in their own attorney's fees to

account for block billing.  *See* Dkt. No. 210, at 5.  The Court should apply a similar reduction

here.

VII.    **THE COURT SHOULD EXERCISE ITS DISCRETION TO REDUCE THE
        ATTORNEYS' FEES INCURRED UNREASONABLY**

Defendants also request that the Court either decline to award, or reduce, Rottenberg

Lipman Rich's fees incurred unreasonably.  Defendants believe the following are unreasonable

billing entries.[5]

A.    **Time Spent Digesting Transcripts**

Rottenberg Lipman Rich's billing records indicate that they devoted 251.98 hours, for a

total fee of $94,979 "digesting" various deposition transcripts. Bursor Decl. ¶ 8, Ex. G.  As other

courts have held, "such entries as 'review transcripts' and 'review deposition transcripts,'" are

"vague and repetitive and do not contain sufficiently detailed descriptions for the Court to

determine if the time spent was reasonable."  *Shukla v. Sharma*, 2010 WL 8435857, at *8

(E.D.N.Y. Dec. 15, 2010).  Even where the entries indicate which transcript was reviewed, they

are still too vague to help the Court determine their reasonableness, "without further

explanation."  *Id.* at *8 n.20.  These records are insufficient to support any award of fees.  *See*

*New York State Ass'n of Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)

("[A]ny attorney … who applies for court-ordered compensation in this Circuit … must

document the application with contemporaneous time records.  These records should specify, for

---

[5] Defendants recognize that many of these entries are block billed and thus may not be
completely attributed to the unreasonable activity.  The inability to isolate the time spent
unreasonably weighs in favor of denying fees for inadequate documentation, or alternatively
applying an across-the-board reduction to account for block billing.  *See supra* Section VI.

each attorney, the date, the hours expended, and *the nature of the work done*.") (emphasis added).

### B.    Two Partners Present At Depositions

Mr. Lipman and Mr. Chase both attended 8 of the 33 depositions taken in the case. Bursor Decl. ¶ 9.  "[W]here two attorneys appear at a deposition on behalf of a single set of clients, they have some burden to show 'that each had a distinct responsibility in the case necessitating his or her presence.'"  *Walker v. Coughlin*, 909 F. Supp. 872, 880 (W.D.N.Y. 1995) (quoting *Kronfeld v. Transworld Airlines, Inc.*, 129 F.R.D. 598, 604 (S.D.N.Y. 1990)).  Here, Plaintiff has not put forth an explanation as to why two "highly experienced litigation attorneys" were necessary at those 8 depositions.  Plaintiff does emphasize that "[a]t least two EBG attorneys attended <u>every</u> deposition in the case, with the three senior EBG attorneys attending every party deposition taken," but does not explain why that necessitated Plaintiff have two partners at every deposition.  Plf.'s Br. at 5.  Plaintiff's billing records show that those depositions occupied 82.87 hours, for a total fee of $39,176.50.  Bursor Decl. ¶ 9, Ex. H.  The Court should reduce that total to $19,588.25 (50%) to account for Plaintiff unnecessarily having two partners at those 8 depositions.

### C.    Rottenberg Lipman Rich Intra-Firm Conferences

Rottenberg Lipman Rich's billing records indicate that they spent 135.21 hours, for a total fee of $45,196 having intra-firm conferences.  Bursor Decl. ¶ 10, Ex. I.  "Generally, conferences between counsel are excessive entries, *Rozell*, 576 F. Supp. 2d at 541, and where the records reveal a number of conferences between trial counsel, 'there is an element of duplication of effort.'"  *Dotson v. City of Syracuse*, 2011 WL 817499, at *25 (N.D.N.Y. Mar. 2, 2011) (quoting *Simmonds v. New York City Dep't of Corrections*, 2008 WL 4303474, at *6 (S.D.N.Y.

2008)).  The Court should therefore reduce any award of attorneys' fees by $45,196 to account for time spent in intra-firm conferences.

### D.      Post-Summation Hours

Rottenberg Lipman Rich also incurred unreasonable hours after summations were completed.  First, Rottenberg Lipman Rich had three attorneys and one paralegal present during the two-day jury deliberations.  Because Mr. Lipman conducted most of the trial, only his presence was necessary during deliberations.  Mr. Chase, Mr. Herschberg, and Ms. Murphy billed a total of 41.79 hours, for a total fee of $11,733 for their attendance at deliberations.  Bursor Decl. ¶ 11, Ex. J.  The Court should therefore reduce any fee award by that amount.  Second, Mr. Chase egregiously billed 8 hours, for a total fee of $3,600 to "attending trial" on February 17, 2015, a full 11 days after the verdict was issued.  *See* Dkt. No. 175-1, at 60.  Those hours must be subtracted from any fee award.

### CONCLUSION

For the foregoing reasons, the Court should either deny in full, or reduce, Plaintiff's application for attorneys' fees.

Dated: March 13, 2015                    Respectfully submitted,

                                         By:   */s/ Scott A. Bursor*
                                               Scott A. Bursor

                                         **BURSOR & FISHER, P.A.**
                                         Scott A. Bursor
                                         Joseph I. Marchese
                                         Neal J. Deckant
                                         Yitzchak Kopel
                                         888 Seventh Ave
                                         New York, NY 10019
                                         Telephone: (212) 989-9113
                                         Facsimile:  (212) 989-9163
                                         Email:  scott@bursor.com
                                                 jmarchese@bursor.com
                                                 ndeckant@bursor.com
                                                 ykopel@bursor.com

                                         *Attorneys for Defendants*